# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMANDA JOHNSON,

                *Plaintiff,*

            v.

CENTRAL INTELLIGENCE AGENCY,

                *Defendant.*

Civil Action No. _____

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Amanda Johnson ("Ms. Johnson"), a PhD candidate at the Massachusetts

Institute of Technology, brings this action against the Central Intelligence Agency ("CIA") to

compel the immediate production of records requested over two years ago under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552. As grounds therefor, Ms. Johnson states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1331 and

5 U.S.C. § 552(a)(4)(B).

2.      Venue in this action is proper in the District of Massachusetts pursuant to

28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.      Ms. Johnson is a resident of Somerville, Massachusetts, and a PhD candidate at

the Massachusetts Institute of Technology's Doctoral Program in History, Anthropology, and

Science, Technology, and Society. Ms. Johnson is an anthropologist, who studies the use of

social media. Upon her anticipated graduation in June 2017, she will continue this scholarship as a post-doctoral fellow at Amherst College.

4.      The CIA is an agency within the meaning of 5 U.S.C. § 552(f)(1), and is headquartered in Fairfax County, Virginia. The CIA has possession, custody, and control of the records to which Ms. Johnson seeks access and which are the subject of this Complaint.

## FACTS

## THE @CIA TWITTER ACCOUNT

5.      As part of its public outreach and information efforts, the CIA operates a public-facing account on the social media platform Twitter (the "@CIA Account"). @CIA, Twitter, https://twitter.com/cia (last visited May 4, 2017).

6.      The @CIA Account is one of the few avenues by which the CIA regularly communicates to the general public about the agency's activities, public events, and historical operations.

7.      The @CIA Account is "verified" by Twitter, Inc. Twitter verifies the accounts of people and entities that are of public interest, to let other users know that the account is authentic. At the time relevant to this matter, Twitter only verified accounts through written correspondence with the account holder.

8.      The @CIA Account has been the subject of public debate and scrutiny, as the agency has chosen to adopt a humorous, and at times sarcastic, tone in its communications to the public about its activities. Its first post on Twitter was itself a FOIA joke, referencing the "Glomar response" to FOIA requests. @CIA, Twitter (June 6, 2014, 10:49 AM), https://twitter.com/cia/status/474971393852182528 ("We can neither confirm nor deny that this

2

is our first tweet."); *see Phillippi v. CIA*, 655 F.2d 1325, 1328 (D.C. Cir. 1981) (documenting the history of the "Glomar response").

9.      It is rare for a federal agency – especially an agency whose duties are so serious – to employ a humorous tone when communicating with the public. This makes the CIA's decision to do so a matter of both public and academic interest, especially for scholars in the humanities.

10.      The decision to use humor as a communicative technique has also been the subject of public criticism, as it can be seen to reaffirm a common fear that the agency is too cavalier and reckless in its activities. *See* Armin Rosen, *The Real Problem with That CIA Tupac Tweet*, Business Insider (July 8, 2014, 12:47pm), http://www.businessinsider.com/the-real-problem-with-that-cia-tupac-tweet-2014-7.

## MS. JOHNSON'S FOIA REQUEST

11.      On December 19, 2014, Ms. Johnson submitted a FOIA request to the CIA seeking three sets of records related to development and basic operation of the CIA Account. (*See* Exhibit A.) The request was for:

a.   A copy of any electronic or written communication discussing the @CIA Account, including emails and email attachments, sent between Twitter and the CIA;

b.   A copy of any documents or materials, including but not limited to, guides, manuals, handbooks, policies, or presentations used to instruct or train agency personnel in the use of the @CIA Account; and

c.   The list of user applications connected to the @CIA Account on the Twitter platform.

12.     All material was limited to content created between August 1, 2012 and the date that the request was processed. For the first part of the request, Ms. Johnson noted that the CIA Director of Public Affairs was the likely custodian of the correspondence between Twitter and the CIA. For the third part of the request, Ms. Johnson provided step-by-step instructions with which a person with access to the @CIA Account could retrieve the requested record.

13.     In her request, Ms. Johnson noted that, as a trained anthropologist, she planned to use the records to develop a research article about government use of social media.

14.     Forty days after the request was sent, on January 28, 2015, Ms. Johnson sent a follow-up letter to confirm receipt of her request and offering to provide clarifying information if needed.

15.     On January 30, 2015, the CIA acknowledged that they received the request on January 2, 2015, and assigned it a tracking number, F-2015-00726.

16.     Over fifty days later, on March 23, 2015, CIA Information and Privacy Coordinator Michael Lavergne ("Mr. Lavergne") wrote to Ms. Johnson, estimated that the CIA would finish this request on September 10, 2015, and instructed Ms. Johnson not to inquire as to the status of the request until such time. Ms. Johnson honored that request.

17.     Having heard nothing by September 21, 2015, Ms. Johnson sent another letter inquiring as to the status of her request, and again offered to provide clarifying information if needed.

18.     On October 8, 2015, Mr. Lavergne responded to Ms. Johnson's letter, and extended the CIA's estimated production date by over 150 days, to February 9, 2016. Mr. Lavergne again instructed Ms. Johnson not to contact the CIA until after that date. Again, Ms. Johnson honored that request.

4

19.     The CIA missed its deadline in February 2016. Ms. Johnson wrote to the CIA to inquire about the request on March 23, 2016. In the letter, Ms. Johnson noted that her request had now been pending for 15 months, and while she was still willing to work with the CIA to clarify the request if needed, she would treat further inaction on the part of the CIA as a constructive denial of the request and seek an administrative appeal accordingly.

20.     56 days after Ms. Johnson sent that letter, on May 17, 2016, Ms. Johnson, through the undersigned counsel, filed an administrative appeal with the CIA's Agency Release Panel.

21.     After this filing, Mr. Lavergne sent an email to the undersigned counsel on June 21, 2016, and denied Ms. Johnson's ability to seek an administrative appeal. Mr. Lavergne stated that the CIA only processes appeals when the agency refuses to produce identified records, determines that no records exist, or denies procedural aspects of FOIA requests. Mr. Lavergne further stated that the CIA "strive[s] to process all FOIA requests on a 'first-in, first-out' basis, and Ms. Johnson's case is in our active queue," but because the CIA had yet to determine whether they would honor Ms. Johnson's request or not, they refused to grant her the ability to administratively appeal.

## DISCOVERY OF IRREGULAR PROCESSING AND DEMAND FOR PRODUCTION

22.     While the request was still pending, the CIA published its annual report to the Attorney General concerning FOIA requests for Fiscal Year 2015. *See* 5 U.S.C. § 552(e)(1); CIA, *Appendix to FY2015 Report*, *available at* https://www.cia.gov/library/readingroom/docs/ CIA_FY2015_Final.pdf (2016).

23.     The report revealed that there were 1,034 outstanding FOIA requests at the start of CIA Fiscal Year 2015. *See* CIA, *Appendix to FY2015 Report*, *available at* https://www.cia.gov/library/readingroom/docs/CIA_FY2015_Final.pdf (2016).

24.     Upon information and belief, and based on Ms. Johnson's tracking number, Ms. Johnson believes that she was the 726th request in Fiscal Year 2015. This would place her initial location in the CIA's queue at no further than 1,760th in line when her request was received.

25.     The CIA stated in its annual report that it processed 3,181 requests in Fiscal Year 2015, which ended on October 31, 2015. The report also calculated an average response time for requests at 39.85 days for simple requests, and 116.22 days for complex requests.

26.     If these figures are true, it would mean that, at the time the report was issued, at least 1,000 requests that were received after Ms. Johnson's request were processed ahead of her, and that the CIA had long passed their average response time for a simple request such as this.

27.     On December 13, 2016 the undersigned counsel contacted the CIA's FOIA processing office, to inquire as to why the CIA had seemingly violated the CIA's "first in, first out" regulations for processing FOIA requests. *See* 32 C.F.R. § 1900.33(b).

28.     On December 14, 2016, a representative from the CIA FOIA office responded. The representative did not explain why Ms. Johnson's request had been passed over, though the representative noted that the CIA will often processes requests sequentially by department, instead of through the agency as a whole. The officer refused to share in which department Ms. Johnson's request was held, how many such departments there are, what the request's place was in the relevant department's queue, or the basis for the excessive delay.

29.     Ms. Johnson, through the undersigned counsel, called again on December 21, 2016; February 2, 2017; March 13, 2017; March 31, 2017; and April 3, 2017. Each time, the CIA's representative refused to share any information beyond the fact that the request was in process.

30.     During this time, the CIA released its annual report for the Fiscal Year 2016. In that report, the CIA stated that it had processed 2,208 requests during the year, bringing the total number of requests processed between September 1, 2015 and October 31, 2016 to 5,389 requests. *See* CIA, *Appendix to FY2016 Report*, *available at* https://www.cia.gov/library/readingroom/docs/CIA_FY2016_Final.pdf (2017).

31.     Based on Ms. Johnson's estimated place in the queue, this would mean that approximately 4,000 requests that had been received after Ms. Johnson's request had been processed, in violation of the CIA's first-in, first-out policy.

32.     On April 5, 2017, 837 days after her request was initially filed, Ms. Johnson sent a demand for immediate production of the requested materials. (*See* Exhibit B.) The letter noted the excessive delay in processing the request, even by the CIA's own professed standards, and asked for an explanation as to why it seems as though the request had been skipped in the queue.

33.     On April 6, 2017, Information and Privacy Coordinator Allison Fong ("Ms. Fong") responded to Ms. Johnson's demand letter via email. (*See* Exhibit C.) Ms. Fong stated that the request was still in process. She gave no estimated completion date, and conceded that Ms. Johnson had grounds to seek judicial remediation of this matter.

34.     On the same day, Ms. Johnson, through the undersigned counsel, responded to Ms. Fong's email. (*See* Exhibit D.) Once again Ms. Johnson inquired as to why her request had been skipped over in the queue in this way, and offered to delay litigation if the agency could demonstrate their plans to produce the records in a timely manner.

35.     The CIA has yet to acknowledge this email, produce an updated deadline for their completion of the request, or produce any of the three sets of records requested by Ms. Johnson over two years and four months ago.

**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552: Failure to Comply with Statutory Deadlines**

36.     Ms. Johnson hereby re-alleges paragraphs 1 through 35 as if fully stated herein.

37.     The CIA's continued failure to process this request and produce responsive records violates the statutory deadlines imposed by FOIA. 5 U.S.C. § 552(a)(6).

38.     Upon information and belief, the CIA has not made reasonable efforts to search for the requested records. 5 U.S.C. § 552(a)(3)(C).

39.     The CIA has not issued a full and final determination as to whether it will produce responsive records, and if not, the basis for withholding any records. 5 U.S.C. § 552(a)(6).

40.     Ms. Johnson has fully exhausted her administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i), as the CIA has failed to make a determination regarding Ms. Johnson's request in the time allotted.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Johnson respectfully requests that this Court:

A.     order Defendant to conduct an adequate search for responsive records pursuant to Ms. Johnson's December 19, 2014 FOIA request within ten business days of the date of this Court's Order in this matter;

B.     order Defendant to produce all responsive records within twenty business days of the date of this Court's Order in this matter;

C.     award Ms. Johnson her costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and,

D.     grant such other relief as the Court may deem just and proper.

Respectfully submitted,

AMANDA JOHNSON,

By her counsel,


 */s/ Andrew F. Sellars*

Andrew F. Sellars (BBO No. 682690)
BU/MIT Technology & Cyberlaw Clinic
Boston University School of Law
765 Commonwealth Avenue
Boston, MA 02215
sellars@bu.edu
Tel: (617) 358-7377
Fax: (617) 353-6944

Dated: May 4, 2017