UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMANDA JOHNSON,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )          C.A. No. 17-cv-10789-JGD
                                             )
CENTRAL INTELLIGENCE AGENCY                  )
                                             )
                    Defendant.               )
---                                          )

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendant, United States Central
Intelligence Agency, requests that the Court grant summary judgment in its favor in this action
brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff filed this
action for injunctive relief, May 4, 2017, complaining that the CIA had not responded to her
December 2014 request to the CIA for records relating to the CIA's use of its Twitter account.
The CIA responded to the FOIA request on October 20, 2017, with the production of eighteen
documents.  On November 2, 2017, Plaintiff notified the Court that she contested the
reasonableness of the CIA's search for responsive documents and, the applicability of the FOIA's
disclosure exemptions to the redacted portions of the documents produced by CIA.  Joint Status
Report at 2-6.   For the reasons detailed in this memorandum, the CIA is entitled to summary
judgment in its favor.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Plaintiff submitted an FOIA request to the CIA on or about December 19, 2014,
requesting CIA records created since August 1, 2012, falling within the following three
categories:

a.  A copy of any electronic or written communication discussing the @CIA Account, including emails and email attachments, sent between Twitter and the CIA;

b.  A copy of any documents or materials, including but not limited to, guides, manuals, handbooks, policies, or presentations used to instruct or train agency personnel in the use of the @CIA Account; and

c.  The list of user applications connected to the @CIA Account on the Twitter platform. For this aspect of the request, Dr. Johnson provided the CIA step-by-step instructions and a specific website URL that the CIA could use to retrieve the requested record.

(Complaint ¶ 11; Answer ¶ 11; Declaration of Antoinette B. Shiner, Information Review Officer, Litigation Information Review Office, CIA, Exhibit to this memorandum, ¶ 7). Plaintiff filed this action on May 4, 2017. Complaint at 7.

2.  The CIA conducted a search for records responsive to Plaintiff's request. In conducting its search, CIA officials knowledgeable about the subject matter of the request were consulted to ascertain the universe of responsive records and to identify the specific offices and individuals who would possess those documents. Shiner Decl. ¶ 9. Based on those consultations, CIA personnel determined that the Office of Public Affairs (OPA) would be the only CIA office likely to possess records responsive to Plaintiff's FOIA request, because the OPA is the CIA office responsible for managing the CIA's web and social media presence. Shiner Decl. ¶ 9. The OPA is the only office within the CIA authorized to access the @CIA Twitter account. Shiner Decl. ¶ 9.

3.  For each of the relevant electronic records and email systems searched, the search staff used search terms that it determined would most accurately identify and retrieve

2

responsive documents, the terms "Twitter," "guides," "manuals," "policies," "OPA," etc., and variations on these terms, likely to reveal potentially relevant documents.  Given the large volume of non-responsive documents containing the search terms identified, IMS worked with OPA to identify the personnel responsible for maintaining the @CIA account, and narrowed their email searches accordingly, excluding email systems and accounts unlikely to contain responsive material.  *Id.* ¶ 10.

4.     These searches, of records created between 1 August 2012 and 1 January 2017, were conducted in all locations in which it was reasonably likely that responsive records would be held.   They were completed on 26 June 2017.  *Id.* ¶ 11.

5.     The CIA produced all of the eighteen records responsive to Plaintiff's request that its search located, on October 20, 2017.  *Id. ¶ 8.*

6.     Portions of the records produced were redacted pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(6) of the FOIA.  Shiner Decl. ¶ 7.

## THE APPLICABLE LAW

### I.     The Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute of material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law.  F.R. Civ. P. 56(a).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party bears the burden of showing the basis for its motion and showing that there is no genuine issue of material facts.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   "Once the moving party has accomplished this feat, the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges ex rel S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex, 477 U.S. at 324).  "If the nonmovant fails to make this

showing, then summary judgment is appropriate." Id. The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). Disputes over facts that are not material to the issues raised will not defeat a motion for summary judgment. Anderson, 477 U.S. at 248. A fact is "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Borges, 605 F. 3d at 5 (citing Martinez v. Colon, 54 F.3d 980, 094 (1st Cir. 1995)).

FOIA actions are "generally and most appropriately" adjudicated through summary judgment. Cunningham v. U.S. Department of Justice, 40 F. Supp.3d 71, 82 (D.D.C. 2014); Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement, 811 F.Supp.2d 713, 732-733 (S.D.N.Y. 2011), citing Bloomberg L.P. v. Board of Governors of the Fed. Reserve Sys., 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009); Miscavige v. Internal Revenue Serv., 2 F.3d 366, 369 (11th Cir. 1993). See Stalcup v. CIA, 768 F.3d 65, 69 (1st Cir. 2014); Church of Scientology v. United States Dept. of Justice, 30 F.3d 224 (1994); Maynard v. CIA, 986 F.2d 547, 550 (1st Cir. 1994). It is in the context of motions for summary judgment that the Court determines whether the agency's search was "reasonably calculated to discover the requested documents," and whether the affidavits submitted by the government support the government's claims of exemption from disclosure. Church of Scientology, 30 F.3d at 229-230. Oleskey ex rel. Boumediene v. U.S. Dept. of Defense, 658 F. Supp.2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). See also, Sephton v. FBI, 442 F.3d 27, 29 (1st Cir. 2006).

An agency satisfies the summary judgment requirements in a FOIA case by providing the court and plaintiff with "affidavits or declarations giving reasonably detailed explanations why any withheld documents fall within an exemption" from disclosure. The New York Times

Company v. U.S. Dept. of Justice, 756 F.3d 100, 112 (2d Cir. 2014); Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non- disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (*quoting* Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also* Public Citizen Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

Summary judgment in FOIA cases are routinely granted on the basis of agency affidavits; Crooker v. Tax Div. of U.S. Dep't of Justice, 1995 WL 783236 at 10 (D. Mass. Nov. 27, 1995); which "are accorded a presumption of good faith. . . ." SafeCard Servs., Inc. v. Sec. & Exchange Comm., 926 F.2d 1197, 1200 (D.C. Cir. 1991).  A court should accord "substantial weight" to agency affidavits in these matters.  Bell v. United States, 563 F.2d 484, 487 (1st Cir. 1977).  The test of sufficiency of the submitted affidavits should be whether the affidavit demonstrates by "sufficient description (that) the contested document logically falls into the category of the exemption indicated," and the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith."  *Id.* at 487.  *See also* Hrones v. C.I.A., 685 F.2d 13, 18 (1st Cir. 1982).  The agency invoking a FOIA exemption bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B); Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 438 (1st Cir. 2006) *citing* Orion Research, Inc. v. EPA, 615 F.2d 551, 553 (1st Cir. 1990); State of Maine v. U.S. Dep't of the Interior, 298 F.3d 60, 65 (1st.Cir. 2002).

**ARGUMENT**

**I.     The Agency's Search for the Requested Records Was Reasonable**

The CIA has conducted an appropriate search for records responsive to Plaintiff's

FOIA request.  In response to a FOIA request, an agency is required to make "a good faith

effort to conduct a search for the requested records, using methods which can be reasonably

expected to produce the information requested."  Stalcup v. CIA, 768 F.3d65, 74 (1st Cir.

2014) *quoting* Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68  (D.C. Cir. 1990); Weisberg v.

Dept. of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "A search by an agency is not

necessarily inadequate if it fails to locate existing documents."  Olesky, 658 F. Supp. 2d at

294.  The "crucial issue is "whether the agency's search was reasonably calculated to discover

the requested documents."  Church of Scientology Internt'l. v. U.S. DOJ, 30 F.3d 224, 230

(1st Cir. 1994), citing Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1992).  "The adequacy of

an agency's search for documents under the FOIA is judged by a standard of reasonableness

and depends on the facts of each case.  Maynard at 559.  The adequacy of the search is

"generally accomplished through an affidavit,: from which "a rebuttable presumption that the

agency acted in good faith emerges."  Stalcup v. CIA, 768 F.3d at 74.  "In order to establish

the adequacy of its search, the agency may rely upon affidavits provided they are relatively

detailed and nonconclusory, and are submitted by responsible agency officials in good faith."

Maynard at 559.   An agency's affidavit "cannot be rebutted by 'purely speculative claims

about the existence and discoverability of other documents.'" *Id.*, Moffat v. U.S.DOJ, 716

F.3d 244, 255 (1st Cir. 2013).  *See also* Sephton v. FBI, 365 F. Supp. 2d 91, 97 (D. Mass.

2005), *aff'd,* 442 F.3d 27 (1st Cir. 2006).

The Declaration of Antoinette B. Shiner establishes that the CIA's search for responsive

records was reasonable.  The declaration provides detail on how the CIA conducted the search,

6

and it creates the presumption that the CIA acted in good faith.  *See* <u>Stalcup v. CIA</u>, 768 F.3d at 74.

Shiner is the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency").  Shiner Decl. ¶ 1.  She is a senior CIA official and holds original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).   Shiner Decl. ¶ 4.  She has extensive management and review experience and is responsible for making classification and release determinations for information.  She is authorized to assess the current, proper classification of CIA information, up to and including top secret information, based on the classification criteria of Executive Order 13526 and applicable regulations. *Id.  ¶¶* 4-5.

Personnel from the Information Management Services (IMS), a component within the CIA that serves as the reception point for all FOIA requests, worked with the CIA Office of General Counsel (OGC) to develop a search strategy to locate records responsive to Plaintiff's request.  *Id. ¶* 8.  CIA personnel consulted with agency officials knowledgeable about the subject matter of the request to determine the universe of responsive records and to identify the specific offices and individuals who would have those documents.  Based on those consultations, CIA personnel determined that the Office of Public Affairs (OPA) would be the appropriate Agency office to search for responsive records.  *Id.*  The OPA is the office within CIA responsible for communicating CIA's mission to external audiences and for enhancing public understanding of the Agency by managing its web and social media presence.  The OPA is the only CIA office authorized to access the @CIA Twitter account.  *Id.*  The OPA Web Team maintains control over

content shared via the CIA's social media and over the Agency's communications with social

media platforms for the purposes of account maintenance and verification.  *Id.*

The IMS search staff tailored its searches for responsive material to account for the

ways in which the CIA's records systems are configured, so that documents could be

accurately identified and retrieved.  *Id.* ¶ 9.  For each of the relevant electronic records and

email systems searched, search personnel used search terms such as "Twitter," "guides,"

"manuals," "policies," "OPA," etc., and variations on these terms, likely to reveal

potentially relevant documents.  Given the large volume of non-responsive documents

containing the search terms, IMS worked with OPA to identify the personnel responsible for

maintaining the @CIA account and narrowed their email searches accordingly, excluding

email systems and accounts unlikely to contain responsive material.  *Id.*  This process

resulted in the CIA locating 18 records responsive to Parts A and B of plaintiff's request,

which were produced to Plaintiff.

With regard to Part C of Plaintiff's request—a list of user applications connected to the

@CIA account, the CIA's searches found no responsive documents.  While Plaintiff has

objected via email, arguing that she has provided the CIA with detailed instructions on how to

access such information on Twitter's website, the CIA is under no obligation to follow those

instructions.  There is no duty imposed on the agency to create records upon receiving a FOIA

request.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975).  Likewise, there is no

duty imposed on the agency to conduct a search of records outside its possession and

control.  Jones-Edwards v. NSA, 196 F. App'x 36, 38 (2d Cir. 2006); Carson v. U.S. Office of

Special Counsel, 534 F. Supp.2d 99, 103 ( (D.D.C. 2008) ("Jurisdiction under the FOIA extends

only to claims arising from the improper withholding of agency records.").  To do as the

Plaintiff asks would require the CIA to search records existing on an external system beyond its control, and to create a record that does not already exist on government systems.

Plaintiff has speculated that there are additional records responsive to Part (b) of her request that the CIA failed to produce. Plaintiff refers to internal communications regarding former Director Brennan's selection of the first Tweet, presentations prepared for external audiences, such as the South by Southwest technology conference, and internal communications with the Agency's Publications Review Board. However, the documents that Plaintiff refers to are not responsive to Part (b) of Plaintiff's request for "documents or materials, including but not limited to, guides, manuals, handbooks, policies, or presentations used to instruct or train agency personnel in the use of the @CIA Account." Neither communications about the selection of the first Tweet nor presentations to external audiences could fall within Plaintiff's request for documents "used to instruct or train agency personnel in the use of the @CIA Account." As to the internal communications with the Agency's Publications Review Board (PRB), the PRB is responsible for reviewing materials submitted by Agency personnel prior to publication. However, the scope of PRB's review is limited to determining whether or not the submitted materials contain classified information. The PRB is not responsible for issuing instructions or training on how to publish material on Twitter or on any other media. *Id.* ¶ 12. Accordingly, prepublication review documents would not be responsive to plaintiff's request. Of course, the CIA is not required to search for records beyond the scope of Plaintiff's request. Voinche v. FBI, No. 96-5304, 1997 WL 411685, at *1 (D.C. Cir. June 19, 1997). See also Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) (an agency has fulfilled its responsibility to search under FOIA when it conducts a search reasonably calculated to uncover records responsive to Plaintiff's request, and an agency is not obligated to run

additional searches when Plaintiff clarifies a prior request).

Plaintiff also objects to the reasonableness of the Agency's search because the CIA has produced no email documents verifying the authenticity of the @CIA Twitter account. However, OPA personnel report that the verification of the CIA's account with Twitter was conducted by telephone conversation rather than through the use of email, and accordingly, there are no responsive documents in this regard. Shiner Decl. ¶ 13.

The CIA's search for responsive documents was conducted in good faith, using methods reasonably calculated to produce the documents responsive to Plaintiff's FOIA request. Plaintiff's claims that additional, unproduced responsive records exist are pure speculation, insufficient to undermine the presumption of good faith accorded to the Shiner Declaration and rebutted by that declaration.

## II.    The CIA Properly Applied FOIA Exemptions (b)(3), (b)(5), and (b)(6).

The CIA produced eighteen responsive documents – all of the documents located by its search -- with redactions of portions of those documents pursuant to FOIA exemptions (b)(3), (b)(5), and (b)(6).   The FOIA "was enacted to facilitate public access to Government documents," and there is a "strong presumption in favor of disclosure." U.S. v. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); see also, Church of Scientology, Int'l. v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  However, in the interest of "safeguarding the efficient administration of the government, the FOIA provides that certain categories of materials are exempted from the general requirements of disclosure," and therefore, may legitimately be withheld from the public.  Carpenter v. U.S. Dep't of Justice, 470 F.3d at 438. "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions." Carpenter, 470 F.3d at 437.  "The government's burden is a light one," however, because "an

agency's justification for invoking a FOIA exemption is sufficient if it appears logical or

plausible.  Katsiaficas v. U.S. CIA, 2017 WL 2172437 at 8, *citing* N.Y.Times Co. v. U.S. Dept.

of Justice, 2016 WL 5946711 at 5 (S.D.N.Y. Aug. 18, 2016).

### (A.)   The CIA Properly Applied Exemption (b)(3).

As is shown by the accompanying Vaughn index, the CIA redacted certain information

from the documents produced pursuant to section (b)(3) of the FOIA.  Exemption (b)(3)

consists of:

> matters that are . . . specifically exempted from disclosure by statute (other than
> section 552(b) of this title), if that statute (A)(i) requires that the matters be withheld
> from the public in such a manner as to leave no discretion on the issue;
> or (ii) establishes particular criteria for withholding or refers to particular types of
> matters to be withheld . . . .

5 U.S.C. § 552(b)(3).   The CIA relied on two statutes that require non-disclosure of specified

information -- the Central Intelligence Agency Act, 50 U.S.C. § 3507, and the National Security

Act, 50 U.S.C. § 3024.  Section 6 of the CIA Act, 50 U.S.C. § 3507,  provides that "the Agency

shall be exempted from the provisions of any…law which require the publication or disclosure of

the organization, functions, names, official titles, salaries or numbers of personnel employed by

the Agency."  Pursuant to section 6 of the CIA Act, the CIA has withheld from disclosure the

titles, names, functions, and organizational information of CIA employees.  Shiner Decl. ¶ 17.

For example, the CIA has withheld detailed descriptions of the official functions of certain

officers and the internal organizational structure of particular offices.  *Id.*

Section 102A(i)(1) of National Security Act, 50 U.S.C. § 3024, provides that the Director

of National Intelligence "shall protect intelligence sources and methods from unauthorized

disclosures.  Pursuant to the National Security Act, the CIA has withheld specific sources

and methods of the Agency, including techniques used to protect information systems,

guidance regarding counter intelligence threats, and the CIA's agreements with social

media providers.  For example, document C06696387 contains information relating to security and counter intelligence protocols, as well as information relating to terms of service.  Shiner Decl. ¶ 16.

Two questions are required to be addressed in determining whether Exemption 3 applies in a particular situation.  "First, does the statute constitute a 'statutory exemption to disclose within the meaning of Exemption 3?'  Second, is the requested information 'included within' the statute's 'protection?'"  Maynard, 986 F.2d at 554 (*quoting* CIA v. Sims, 471 U.S. 159, 167 (1985)).  First, the National Security Act and Section 6 of the Central Intelligence Agency Act both fall under Exemption 3.  See Baker v. CIA, 425 F. Supp. 633, 635 (D.C. Cir. 1977) (the previous codification of Section 6 of the Central Intelligence Agency Act qualifies as a withholding statute within the meaning of Exemption 3); see also Maynard, 986 F.2d at 554 (holding that the previous codification of the National Security Act qualifies as a withholding statute within the meaning of Exemption 3); Larson, 565 F.3d at 868 (*citing* New York Times v. Dept. of Defense, 499 F.Supp.2d 501, 512-13 (S.D.N.Y. 2007) .  Second, "once a court determines that the statute in question is an Exemption 3 statute and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends." *Id.* (*quoting* Aronson v. IRS, 973 F.2d 962, 965, 967 (1st Cir. 1992)).  The applicability of Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  New York Times v. Dept. of Defense, 499 F.Supp.2d 501, 512-13 (S.D.N.Y. 2007) *quoting* Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978).  *See* Wilner, 592 F.3d 60, 76 (2d Cir. 2009)("it is bad policy to second guess the predictive judgment made by the government's intelligence agencies regarding whether disclosure of information would pose a threat to

national security.'').

The CIA Director is given broad authority to withhold agency information from FOIA requests in order to protect national security interests.  C.I.A. v. Sims, 471 U.S. 159, 176-177 (1985) (documents that would reveal the identities of CIA intelligence sources and operatives undermines the CIA Act, and the NSA Act).  This Circuit has followed the reasoning of Sims, which noted that it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.  Maynard at 554 *quoting* CIA v. Sims, 471 U.S. at 180.  As a result, once the Court "determines that the statute in question is an Exemption 3 statute and that the information requested at least arguably falls within the statute, FOIA *de novo* review normally ends." Church of Scientology International v. U.S. Dept. of Justice, 30 F.3d at 235, *quoting* Maynard at 554. The CIA's decision to withhold information under exemption 3 is entitled to deference.  *Id.* Here, there is no basis for any question regarding the applicability of the statutes to Exemption 3 or any question regarding whether the redacted information was properly withheld.

**(B.)  The CIA Properly Applied Exemption (b)(5).**

Exemption 5 to the FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C.§ 552(b)(5); see also *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002).  The scope of the exemption is intended to incorporate and mimic the rules of civil discovery, including doctrines such as "attorney work product," "attorney client privilege," and the "deliberative process."  *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-150 (1975); *see also State of Maine*, 298 F.3d at 66.  Documents covered by the deliberative process privilege and

13

exempt under Exemption 5 include those that "reflec[t] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150, *quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.C. 1966). The deliberative process privilege exists "to prevent injury to the quality of agency decisions. *Sears*, 421 U.S. at 151. This also helps to avoid confusion of the public due to "...dissemination of documents suggesting reasons and rationales for a course of action which were not...the ultimate reasons for that action." *American Federation of Government Employees, AFL-CIO, Local 1164 v. U.S. Dept. Of Health & Human Services*, 64 F.Supp.2d 104, 107 (D.Mass.1999), *quoting Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 557 (1st Cir. 1992). The deliberative process privilege protects from disclosure recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. *U.S. v. Weber Aircraft Corp*. 465 U.S. 792, 802 (1984).

To invoke the deliberative process privilege, the agency carries the burden of establishing the applicability of the exemption and must show that the withheld material is "an inter- or intra-agency memorandum" and that the document is deliberative and predecisional. Stalcup v. CIA, 768 F.3d at 70. Right to Life v. U.S. Dept. of Health & Human Services, 778 F.3d 4252 (1st Cir. 2015), *citing* Providence Journal Co. v. U.S. Dept. of Army, 981 F.2d 552, 557 (1st Cir. 1991). A predecisonal document is one that is "prepared prior to a final decision in order to assist an agency decision maker in arriving at his decision. *See Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992), *quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp*., 421 U.S. 168, 184 (1975). A document is "deliberative" if it reflects "the give-and-take of the consultative process." Stalcup at 70. That is, the document was "prepared to facilitate

and inform a final decision or deliberative function entrusted to the agency." *Id. citing*

Providence Journal Co. at 560.

Here, the single document with information redacted pursuant to Exemption 5 is

document CO6468167.  The redacted portion of the document educates employees on risks and

benefits of certain activities on social media in order to inform their decisionmaking process on

the use of such media.  Shiner Decl. ¶ 19.  Disclosure of the information withheld would inhibit

the frank communications and free exchange of ideas that the deliberative process privilege is

designed to protect.

### (C.)   The CIA Properly Applied Exemption (b)(6).

Exemption 6 of the FOIA exempts from disclosure "personnel and medical files and similar

files when the disclosure of such information would constitute a clearly unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(6).   The purpose of Exemption 6 is to "protect individuals

from the injury and embarrassment that can result from unnecessary disclosure of personal

information."  U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 599 (1982).  The

statutory language concerning files  "similar" to personnel or medical files is read broadly to

include "information which applies to a particular individual . . . sought from government

records."  *Id*. at 602.  This exemption is reviewed under a balancing test, balancing the public's

need for the information against the individual's privacy interest.  Wood v. FBI, 432 F.2d 78, 84

(2d Cir. 20005).  "The privacy side of the balancing test is broad and encompasses all interests

involving the individual's control of information concerning his or her person."  *Id*. at 88.

Accordingly, even a small privacy interest triggers a balancing analysis.  *See* Associated Press v.

Dept. of Defense, 554 F.3d 274, 285 (2d Cir. 2009).  The "only relevant public interest in

disclosure to be weighed in this balance is the extent to which disclosure would serve the core

purpose of the FOIA, which is contributing significantly to public understanding of the operations

and activities of the government." Dept. of Defense v. FLRA, 510 U.S. 487, 495 (1994).  In

other words, to what degree would the information shed light on the agency's statutory duties.

DOJ v. Reporters' Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  "The requesting

party bears the burden of establishing that disclosure of personal information would serve a

public interest cognizable under the FOIA."  Associated Press, 549 F.2d at 66.  This purpose is

not furthered by disclosure of information that "reveals little or nothing about an agency's own

conduct."  DOJ v. Reporters' Comm. for Freedom of the Press, 489 U.S. at  773.

        The CIA has applied Exemption 6 to portions of several documents responsive to

Plaintiff's FOIA request.  The exemption has been applied to emails between CIA

employees and employees at Twitter.  The exemption has been applied for the purpose of

protecting the names, email addresses, and job titles of CIA and Twitter employees in these

communications.  Shiner Decl. ¶ 21.  The redacted information could easily be used to

identify the individuals.  Id.  The exemption was applied because these individuals have a

privacy interest in the information and there is no countervailing public interest in the

disclosure of these details.  Id.  Revealing the identities of these individuals, or information

that would allow them to be identified, will shed no light on the conduct of the CIA's

activities or operations beyond what is already being disclosed to the public through the

records released and will not contribute to the public understanding of the content of

communications between CIA and Twitter employees or of the guidance employees receive

on the use of social media.  Id.  Accordingly, because this information reveals identifying

personal information about individuals and will not shed light on the conduct of the

agency's activities and operations, Exemption 6 has been appropriately applied.

## CONCLUSION

For the foregoing reasons, the CIA is entitled to summary judgment in its favor because it has complied with the requirements of the FOIA in its search for documents responsive to Plaintiff's FOIA request, has produced the documents, and has properly redacted information in the documents in accordance with its authority to do so under Exemptions 3, 5, and 6.

Respectfully submitted,

CENTRAL INTELLIGENCE AGENCY

By its attorneys,

ANDREW E. LELLING
United States Attorney

By:     */s/ Anita Johnson*_____ __ ___
        ANITA JOHNSON, BBO No. 565540
        Assistant United States Attorney
        Moakley United States Courthouse
        One Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3266
        Anita.Johnson@usdoj.gov


### Certificate of Service

I certify that the foregoing will be filed through the electronic filing system of the Court, which system will serve counsel for Plaintiff on this 23d day of January 2018.

*/s/  Anita Johnson*_____