**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMANDA JOHNSON,

       Plaintiff,

   v.

CENTRAL INTELLIGENCE AGENCY,

       Defendant.

Civil Action No. 17-10789

DECLARATION OF ANTOINETTE B. SHINER
INFORMATION REVIEW OFFICER
FOR THE LITIGATION INFORMATION REVIEW OFFICE
CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

## I.   INTRODUCTION

1.   This declaration supports the CIA's Motion for Summary Judgment in this case.  The purpose of this declaration and the accompanying Vaughn index, attached as Exhibit A, is to provide the Court with a detailed description of the search and the records at issue, and to justify the CIA's invocation of FOIA exemptions 3, 5, and 6 to protect certain national security information, privileged material, and personally-identifying information.

2.   I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency").  I have

1

held this position since 19 January 2016. I have worked in the information review and release field since 2000.

3.    Prior to becoming the IRO for LIRO, I served as the IRO for the Directorate of Support ("DS") for over sixteen months.  In that capacity, I was responsible for making classification and release determinations for information originating within the DS.  Prior to that, I was the Deputy IRO for the Director's Area of the CIA ("DIR Area") for over three years.  In that role, I was responsible for making classification and release determinations for information originating within the DIR Area.  Before assuming that role, I was a reviewer in the DS for seven months, where I performed research and provided input and recommendations on classification and release decisions.  Prior to that position, I worked in the Public Information Program Division ("PIPD") within the Information Management Services ("IMS") Group for over ten years engaged in all aspects of FOIA case management. Before transitioning to the area of information review and release, I worked as a paralegal and held various administrative positions within the Office of General Counsel for over thirteen years.

4.    I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive

Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

5.    Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

6.    Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## I. PLAINTIFF'S FOIA REQUESTS

7.    Plaintiff submitted the FOIA request at issue in this litigation by letter dated 19 December 2014. Plaintiff sought three sets of records, including: (1) any electronic or written communications discussing the @CIA account, including emails and email attachments, sent between Twitter and the CIA; (2) copies of any documents or materials used to instruct or train agency personnel in the use of the @CIA account; and (3) a list of the

user applications connected to the @CIA account on the Twitter platform.  The CIA assigned this request reference number F-2015-00726. This request is attached to this declaration as Exhibit B.

8.    Plaintiff filed the instant civil action on 4 May 2017. In accordance with the schedule set by this Court, the CIA conducted searches for records responsive to Plaintiff's request and produced documents to Plaintiff on 20 October 2017. The Agency produced, in part, all 18 responsive documents located to Plaintiff.

## II.  SEARCHES FOR RESPONSIVE RECORDS

9.    As outlined above, the requested records pertain to written communications between CIA and Twitter about the @CIA Twitter account, guidance used for instruction or training Agency employees on the use of the @CIA account, and a list of user applications connected to the @CIA account on the Twitter platform.  In the course of conducting searches for this material, personnel from Information Management Services (IMS), a component within the CIA that serves as the reception point for all FOIA requests, worked with the Office of General Counsel (OGC) to develop a search strategy.  In particular, IMS personnel consulted with Agency officials knowledgeable about the subject matter of the request to ascertain the potential

universe of responsive records and to identify all of the
specific offices and individuals who would possess those
documents.  Based on those consultations, CIA personnel
determined that the Office of Public Affairs (OPA) would be the
only Agency office reasonably likely to possess records
responsive to Plaintiff's request.  The OPA is the office within
CIA responsible for communicating CIA's mission to external
audiences, and enhancing public understanding of the Agency by
managing its web and social media presence.  Not only is it the
responsibility of the OPA to manage CIA's social media presence,
it is the only office within CIA authorized to access the @CIA
Twitter account.  The OPA Web Team maintains control over
content shared via the Agency's social media, and communications
with social media platforms for the purposes of account
maintenance and verification.

     10.  The IMS search professionals tailored their searches
for responsive material to account for the ways in which the
Agency's records systems are configured, in order to mostre
accurately identify and retrieve responsive documents.  For each
of the relevant electronic records and email systems searched,
search personnel used search terms including "Twitter,"
"guides," "manuals," "policies," "OPA," etc., and variations on
these terms, likely to reveal potentially relevant documents.
Given the large volume of non-responsive documents containing

the search terms identified, IMS worked with OPA to identify the specific personnel responsible for maintaining the @CIA account, and narrowed their email searches accordingly, excluding email systems and accounts not reasonably likely to contain responsive material.

11.   The searches described above, limited to records created between 1 August 2012 and 1 January 2017, were completed on 26 June 2017.  Searches were conducted in all locations in which it is reasonably likely that responsive records would reside and used searched terms and methods calculated to locate those documents.  The CIA's rationale for withholding information in part is explained below and is also documented in the accompanying Vaughn index.

12.   Additionally, it has come to my attention that Plaintiff has asserted specific objections to the Agency's search in this case. In particular, I understand Plaintiff asserts that the Agency's email searches were inadequate as evidenced by the fact that CIA has not produced any email used to verify the authenticity of the @CIA Twitter account, nor has it produced any correspondence relating to the Agency's prepublication review process.

13.   As described in detail above, the Agency's searches in this case were conducted in a manner reasonably calculated to locate responsive records. Regarding Plaintiff's "verification

email" objection, OPA personnel report that verification of
CIA's account with Twitter was conducted via telephone rather
than email, which would explain why the Agency's searches did
not produce the "verification email" Plaintiff seeks.

14.   With regard to Plaintiff's prepublication review
objection, I note that the Publications Review Board (PRB) is
the CIA's office charged with reviewing materials produced by
CIA personnel– former and current (both employees and
contractors) – intended for publication in any form in order to
determine whether the proposed materials contain classified
information.  The purpose of prepublication review is to ensure
that classified information, damaging to the national security
is not inadvertently disclosed.  The PRB is not charged with
providing guidance to CIA personnel regarding the use of any
particular media.  The scope of PRB's review of any material
submitted is accordingly limited to making classification
determinations without regard to the publication media, and any
PRB determination would not include instruction or training
specific to Twitter or any other particular media.

## III.  EXEMPTIONS CLAIMED

## A.  EXEMPTION 3

15.   Exemption 3 protects information that is specifically
exempted from disclosure by statute.  A statute authorizing

withholding under Exemption 3 must (A) require that the matters
be withheld from the public in such a manner as to leave no
discretion on the issue, or (B) establish particular criteria
for withholding or refer to particular types of matters to be
withheld.  5 U.S.C. § 552(b)(3).

16.   Here, Section 102A(i)(1) of the National Security
Act, as amended, 50 U.S.C. § 3024, and the CIA Act, as amended,
50 U.S.C. § 3507, apply to certain information contained in the
responsive documents.  The National Security Act provides that
the Director of National Intelligence "shall protect
intelligence sources and methods from unauthorized disclosure."
Likewise, Section 1.6(d) of Executive Order 12333 requires the
Director of the Central Intelligence Agency to "[p]rotect
intelligence and intelligence sources, methods, and activities
from unauthorized disclosure in accordance with guidance from
the [DNI][.]"  Section 6 of the CIA Act protects "the
organization, functions, names, official titles, salaries, or
numbers of personnel employed by the Agency" from disclosure.
50 U.S.C. § 3507.

17.   I note that the respective provisions of the National
Security Act and the CIA Act have been widely recognized by
courts to constitute withholding statutes in accordance with
Exemption 3.  Exemption (b)(3) in conjunction with the National
Security Act is applicable because the information would reveal

8

specific sources and methods of the Agency, including techniques used to protect information systems, guidance regarding counter intelligence threats, and the Agency's agreements with social media providers. For example, document C06696387 contains information relating to security and counter-intelligence protocols, as well as information relating to terms of service. Although no harm rationale is required under Exemption 3 or either statute, the Agency notes that disclosure of this information could highlight counter-intelligence vulnerabilities of the Agency, possibly compromising classified information and the conduct of Agency activities.

18.   In addition, pursuant to Section 6 of the CIA Act, the CIA withheld the titles, names, functions, and organizational information of CIA employees. In some instances, for example document C06696387, detailed descriptions of the official functions of certain officers or the internal organizational structure of certain offices require lengthier redactions.

## B.   EXEMPTION 5

19.   Exemption 5 provides that the FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a preliminary matter, the only

document for which Exemption 5 was asserted was circulated within the Agency and therefore satisfies the intra-agency threshold of the exemption. As described in the attached Vaughn index, the information for which Exemption 5 was asserted is protected by the deliberative process privilege.

20. The deliberative process privilege protects Agency communications that are pre-decisional and deliberative. The purpose of the privilege is to prevent injury to the quality of agency decision-making. Here, in document C06468167, the Agency invoked the deliberative process privilege over information that is pre-decisional and deliberative in nature because it provides information for Agency employees to consider prior to making a decision whether to engage in certain activities on social media. It provides employees with information about the risks and benefits of certain activities on social media, and is intended to inform their decision-making process. Disclosure of the information withheld pursuant to the privilege would inhibit the frank communications and free exchange of ideas that the privilege is designed to protect.

C. **EXEMPTION 6**

21. Exemption 6 protects from disclosure "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6). Courts have broadly
construed the term "similar files" to cover any personally
identifying information. In applying Exemption 6, an agency is
required to balance the relevant privacy interests of the
individuals against the public interest in disclosure. In order
to withhold information pursuant to Exemption 6, an agency must
determine that the disclosure "would constitute a clearly
unwarranted invasion of personal privacy." 5 U.S.C.
§ 552(b)(6). The public interest in the FOIA context is defined
as information that would "shed[ ] light on the performance of
[an Agency's] statutory duties."[1] Information that does not
directly reveal the operations or activities of the federal
government has routinely been found by courts to fall outside
the scope of the public interest that FOIA was enacted to serve.

22.   In this case, several of the documents at issue are
emails between Agency employees and employees at Twitter. The
CIA applied Exemption 6 only to protect the names, email
addresses, and job titles of CIA and Twitter employees in these
communications. This is information which could easily be used
to identify those individuals. Revealing the identities of
these specific individuals, or information that would allow them
to be identified, will not shed light on the conduct of the

---

[1] <u>Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489
U.S. 749, 773 (1989).

Agency's activities or operations beyond what is already being disclosed to the public through the release in part of these records.  Unlike the information concerning decisions made or actions taken by CIA employees, the names and email addresses of particular employees are not fundamental to the activities of the Government, nor will such information contribute to the public understanding of the content of communications between CIA and Twitter employees or of the guidance employees receive on the use of social media. In contrast, the release of the names and other identifying information would be reasonably likely to subject those individuals or those associated with them to increased harassment or threat as employees of the CIA or of Twitter.  As a result, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.

23.   Therefore, I have determined that Exemption 6 applies to the names and identifying information of CIA employees and the names of non-agency personnel appearing in the records. Accordingly, the CIA has applied Exemption 6 to protect the privacy interest of these individuals.

*     *     *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of January 2018.


_Antoinette B. Shiner_
Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency