**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

AMANDA JOHNSON,

                             Plaintiff,

v.                                                                        No. 17-cv-10789-JGD

CENTRAL INTELLIGENCE AGENCY,

                             Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

ARGUMENT .................................................................................................................3

   I.   **Defendant Has Failed to Establish That the Agency Conducted an Adequate Search** .....................................................................................................................4

      A. Summary Judgment is Inappropriate Because Defendant's Affidavit Lacks Any Details That Would Allow This Court to Evaluate the Adequacy of the Agency's Search.........................................................................................................4

      B. The Narrow Scope of Defendant's Search and Positive Indications of Overlooked Materials Establish That Defendant Has Not Conducted an Adequate Search..........6

        i.  Defendant Impermissibly Narrowed Its Interpretation of the Scope of Plaintiff's Request .................................................................................................................7

        ii. There Exist Other Positive Indications of Overlooked Materials That Defendant Has Yet to Acknowledge ...................................................................................10

      C. The Third Part of Plaintiff's Request Does Not Require Defendant to Create a New Record or Obtain a Record Outside of the Agency's Possession and Control..12

   II.  **Defendant Has Failed to Justify Its Withholding of any of the Records** ...................14

      A. Defendant Has Failed to Provide the Court with Sufficient Information to Determine the Applicability of Exemption 3 .............................................................15

      B. The CIA Improperly Applied Exemption 5 Because the Material in Question is Post-Decisional and Not Deliberative ........................................................................17

      C. Defendant Improperly Applies Exemption 6 Because the Names and Job Titles of Twitter Employees Are Not Similar to Medical or Personnel Records, the Disclosure of Which Results in a Clearly Unwarranted Invasion of Privacy..............................18

CONCLUSION .............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*ACLU Found. of Mass. v. FBI*,
   No. 14-cv-11759, 2016 WL 4411492 (D. Mass. Aug. 17, 2016) ...............................3

*Aguiar v. DEA*, 865 F.3d 730 (D.C. Cir. 2017)...........................................................6

*Ayyad v. IRS*, No. 16-cv-3032, 2018 WL 704849 (D. Md. Feb. 2, 2018)...................11

*Bennett v. DEA*, 55 F. Supp. 2d 36 (D.D.C. 1999) ......................................................5

*Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224 (1st Cir. 1994)......................passim

*Church of Scientology of Cal. v. IRS*, 792 F.2d 146 (D.C. Cir. 1986)...........................4

*Church of Scientology of Cal. v. Turner*, 662 F.2d 784 (D.C. Cir. 1980)...................15

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145 (D.C. Cir. 2016) ..... 13, 14

*Ctr. for Biological Diversity v. EPA*, --- F. Supp. 3d ---,
   No. 16-cv-175, 2017 WL 4326381 (D.D.C. Sept. 28, 2017)....................................7

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ......................................................19

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ..............................................13

*Dep't of State v. Ray*, 502 U.S. 164 (1991)...............................................................19

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 82 F. Supp. 3d 307 (D.D.C. 2015) ...........................6

*Families for Freedom v. CBP*,
   837 F. Supp. 2d 287 (S.D.N.Y. 2011) ................................................................18

*FCC v. AT&T*, 562 U.S. 397 (2011) ........................................................................19

*Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34 (D.D.C. 2009) ....................................3

*Founding Church of Scientology v. NSA*, 610 F.2d 824 (D.C. Cir. 1979) ...................15

*Friends of Blackwater v. Dep't of Justice*, 391 F. Supp. 2d 115 (D.D.C. 2005) .................. 10, 12

*Gawker Media LLC v. FBI*, 145 F. Supp. 3d 1100 (M.D. Fla. 2015)..........................................13

*Gillin v. IRS*, 980 F.2d 819 (1st Cir. 1992) .................................................................................8

*Hall v. CIA*, 268 F. Supp. 3d 148 (D.D.C. 2017) ................................................................1, 3, 8

*Hall v. CIA*, 881 F. Supp. 2d 38 (D.D.C. 2012) ...................................................................19, 20

*Info. Network for Responsible Mining v. Bureau of Land Mgmt.*,
   611 F. Supp. 2d 1178 (D. Colo. 2009) ...............................................................................11

*Int'l Refugee Assistance Project v. Trump*, 265 F. Supp. 3d 570 (D. Md. 2017) .......................19

*(Adam) Johnson v. CIA*,
   No. 17-cv-1928, Dkt. No. 28, Slip Op. at 5 (S.D.N.Y. filed Jan. 30, 2018)...........................16

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 857 F. Supp. 2d 129 (D.D.C. 2012) .................5

*Maine v. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002) ...............................................................3

*Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993).......................................................................4, 6

*Moffat v. Dep't of Justice*,
   No. 09-cv-12067, 2011 WL 3475440 (D. Mass. Aug. 5, 2011) ......................................1, 3, 7

*NARA v. Favish*, 541 U.S. 157 (2004) ....................................................................................18

*Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013)..............................................5

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012)............................................13

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995)..............................1, 7, 9

*Neighborhood Assistance Corp. of Am. v. Dep't of Hous. & Urban Dev.*,
   19 F. Supp. 3d 1 (D.D.C. 2013) .............................................................................................9

*News Grp. Boston, Inc. v. National R.R. Passenger Corp.*,
   799 F. Supp. 1264 (D. Mass. 1992) .....................................................................................19

*Nkihtaqmikon v. Bureau of Indian Affairs*, 672 F. Supp. 2d 154 (D. Me. 2009) ..........................7

*N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014) .........................................16, 17

*O'Connor v. Office of Foreign Assets Control*, No. 17-cv-1490,
2017 WL 5901086 (E.D. Pa. Nov. 30, 2017) ........................................................ 11

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ........................................ 16

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) .......................................... 19

*Providence Journal Co. v. Dep't of Army*, 981 F.2d 552 (1st Cir. 1992) .............. 17, 18

*Pub. Citizen v. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81 (D.D.C. 2013) ................. 10

*Pub. Emps. For Envtl. Responsibility v. U.S. Int'l Boundary & Water Comm'n.*,
842 F. Supp. 2d 219 (D.D.C. 2012) .............................................................. 4, 7, 9

*Reich v. Dep't of Energy*, 811 F. Supp. 2d 542 (D. Mass. 2011) ............................... 14

*Reporters Comm. For Freedom of the Press v. FBI*, 877 F.3d 399 (D.C. Cir. 2017) .............. 4, 6

*Richardson v. United States*, 80 F. Supp. 3d 128 (D.D.C. 2015) ................................ 12

*Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26 (D.D.C. 2017) .................................. 13

*Sack v. CIA*, 53 F. Supp. 3d 154 (D.D.C. 2014) .................................................... 5

*Safety Research & Strategies, Inc. v. Dep't of Trans.*,
903 F. Supp. 2d 1 (D.D.C. 2012) .................................................................. 12

*Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983) ........................................ 17

*Stalcup v. CIA*, 768 F.3d 65 (1st Cir. 2014) ............................................. 3, 17, 18

*Stalcup v. Dep't of Def.*, No. 13-cv-11967, 2015 WL 5545059 (D. Mass. Sept. 18, 2015) ....... 4, 5

*Stalcup v. Dep't of Def.*, No. 13-cv-11967, 2016 WL 6868158 (D. Mass. Jan. 27, 2016) ............ 5

*Union Leader Corp. v. Dept. of Homeland Sec.*, 749 F.3d 45 (1st Cir. 2014) ...................... 3

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ..................... 1, 4, 9, 10

*Whitaker v. CIA*, 31 F. Supp. 3d 23 (D.D.C. 2014) ................................................. 15

**Statutes**

5 U.S.C. § 552 ................................................................................................ 1, 17, 18

50 U.S.C. § 3024 .................................................................................................... 15

50 U.S.C. § 3036 ...................................................................................................... 9

50 U.S.C. § 3507 .................................................................................................... 15

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 3, 12

## INTRODUCTION

For the past three years, Defendant Central Intelligence Agency has repeatedly dodged its obligations under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), by failing to adequately respond to Plaintiff Dr. Amanda Johnson's simple and straightforward FOIA request for records related to the Defendant's Twitter account. Now forced to respond to Plaintiff's FOIA request by this litigation, Defendant has opted to produce a skeleton of a FOIA affidavit rather than the real thing. The affidavit does not state which record systems were searched, how the request was construed and limited, how the initial records identified were narrowed, or where, precisely, the agency searched. This generates a genuine issue of material fact surrounding the adequacy of the search, and summary judgment is inappropriate for that reason. *Moffat v. Dep't of Justice*, No. 09-cv-12067, 2011 WL 3475440 at *6 (D. Mass. Aug. 5, 2011); *Hall v. CIA*, 268 F. Supp. 3d 148, 160–61 (D.D.C. 2017).

Where the affidavit is clear, it clearly shows that Defendant's search was under-inclusive. The agency limited its search solely to one department for all aspects of the request, even though Defendant's affidavit points to the existence of relevant records in other branches of the agency. Further, Plaintiff informed Defendant immediately after receiving the records of clearly omitted material. Rather than address these issues, the agency strains its interpretation of Plaintiff's request to avoid having to conduct a proper search. This violates the agency's obligation to construe requests broadly, *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), and to "follow through on obvious leads" to discover requested documents. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). As to the records that have been produced, the bases for applying the FOIA exemptions are entirely unjustified.

For these reasons, Plaintiff asks that the Court deny Defendant's Motion for Summary

Judgment, and require additional production and discovery to ensure full and proper compliance with Plaintiff's FOIA request.

## STATEMENT OF FACTS

1. Plaintiff agrees with the facts as stated in paragraph 1 of Defendant's Statement of Material Facts. Plaintiff submitted a FOIA request on or about December 19, 2014, seeking three sets of records from Defendant related to its Twitter account. Def. Memo. Supp. Mot. Summ. J. 1–2, ECF No. 24.

2. After this action was filed in May 2017, Defendant conducted a search pursuant to this request. Def. Memo. 3; Decl. of Antoinette B. Shiner ¶ 11, ECF No. 24-1. Eighteen records were produced, totaling 66 pages, 50 of which were redacted in part and 10 of which were redacted in full. Joint Status Report at 2, ECF No. 19.

3. Two days after receiving these records, attorney for Plaintiff sent attorney for Defendant a detailed email identifying the many records that appeared to be missing and indicating a willingness to end the litigation if Defendant fully addressed these particular omissions. Declaration of Andrew F. Sellars, Ex. F. Defendant refused to conduct additional searches. Sellars Decl. ¶ 14.

4. Plaintiff disputes Defendant's contention in paragraphs 2–6 that the search was of an appropriate scope based on her initial request, that the proper record systems were searched, that the search terms used would accurately identify and retrieve responsive documents, that the search was appropriately narrowed, and that redactions were done so appropriately. *See* Def. Memo. 2–3. Defendant has provided insufficient evidence to support these claims, and where there is evidence, the evidence indicates that the search and response were inadequate as a matter of law, as set forth below.

**ARGUMENT**

Defendant's insufficient affidavit, inadequate search, and unjustified claims to exemptions in response to Plaintiff's well-defined FOIA request have in no way shown that Defendant is entitled to summary judgment. Summary judgment is only appropriate if Defendant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views all facts "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Moffat*, 2011 WL 3475440 at *1. This Court reviews agency determinations in FOIA cases *de novo*. *See Maine v. Dep't of Interior*, 298 F.3d 60, 65 (1st Cir. 2002).

The FOIA "was enacted to facilitate public access to government documents." *Union Leader Corp. v. Dep't of Homeland Sec.*, 749 F.3d 45, 49 (1st Cir. 2014) (internal quotations omitted). Accordingly, the burden falls on the government to prove it is entitled to summary judgment by demonstrating that it "has fully discharged its obligations under the FOIA, after the underlying facts and inferences to be drawn from them are construed in the light most favorable to the FOIA requestor." *Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009); *see ACLU Found. of Mass. v. FBI*, No. 14-cv-11759, 2016 WL 4411492 at *3 (D. Mass. Aug. 17, 2016). Defendant must, among other things, provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Hall*, 268 F. Supp. 3d at 154. As to any withheld material, the government bears the burden to show that it properly withheld information under the FOIA exemptions. *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014); *Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224, 231 (1st Cir. 1994).

## I.     Defendant Has Failed to Establish That the Agency Conducted an Adequate Search

Defendant has not carried its burden of establishing that it conducted an adequate search, as Defendant's affidavit and search are both insufficient. *Maynard v. CIA*, 986 F.2d 547, 559–60 (1st Cir. 1993); *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 403 (D.C. Cir. 2017). Without a detailed description of the search conducted, a genuine issue of material fact remains because this Court cannot evaluate whether Defendant's search was adequate. *See Church of Scientology Int'l*, 30 F.3d at 239–40.

Furthermore, where the affidavit is clear, it shows that Defendant deliberately overlooked record systems that it should have searched, adopting an improperly narrow reading of Plaintiff's request. *Pub. Emps. for Envtl. Responsibility. v. U.S. Int'l Boundary & Water Comm'n.*, 842 F. Supp. 2d 219, 225 (D.D.C. 2012). Plaintiff has also identified numerous omitted documents, the existence of which is readily apparent based on the material produced to date that Defendant impermissibly overlooked. *Valencia-Lucena*, 180 F.3d at 327 ("It is well-settled that if an agency has reason to know certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden.").

### A.  Summary Judgment is Inappropriate Because Defendant's Affidavit Lacks Any Details That Would Allow This Court to Evaluate the Adequacy of the Agency's Search

"An adequate affidavit will describe in reasonable detail the scope and method by which the search was conducted and describe at least generally the structure of the agency's file system which makes further search difficult." *Stalcup v. Dep't of Def.*, No. 13-cv-11967, 2015 WL 5545059 at *3 (D. Mass. Sept. 18, 2015) (quoting *Maynard*, 986 F.2d at 559–60). This must be done through detailed, nonconclusory affidavits, "reciting facts which enable the District Court to satisfy itself that all appropriate files have been searched." *Church of Scientology of Cal. v.*

*IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986). The CIA gets no exception from this requirement, even though it has a greater power than most agencies to keep its personnel secret. *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 179 (D.D.C. 2013) ("[T]he organization of the CIA's computer systems is not protected by [the CIA Act.]"); *accord. Sack v. CIA*, 53 F. Supp. 3d 154, 171 (D.D.C. 2014).

Defendant relies on an affidavit that "nowhere describe[s] in detail the scope and method by which the search was conducted or the structure of the . . . file system." *Stalcup*, 2015 WL 5545059 at *5. Indeed, Defendant's affidavit is more specific about what was not searched than what was. It notes that Defendant did not search for any records outside of the CIA Office of Public Affairs ("OPA"). Shiner Decl. ¶ 9. It mentions that "relevant" electronic record and email systems were searched, but it does not say which records systems those were. *Id.* ¶ 10; *see Bennett v. DEA*, 55 F. Supp. 2d 36, 40 (D.D.C. 1999) ("simply stating that any and all records were searched is insufficient" to establish the adequacy of a search). It says that Defendant used search terms like "manuals," and "guides" to search these databases, but then did not use the results of those searches directly, because they led to a "large volume of non-responsive documents," as one would expect when using such open-ended and vague terms. Shiner Decl. ¶ 10; *Judicial Watch, Inc. v. Dep't of Homeland Security*, 857 F. Supp. 2d 129, 140 (D.D.C. 2012) (rejecting adequacy of an affidavit that, "while including the search terms used . . . , does not describe how the search was conducted or what records were searched").

The affidavit never goes on to say what *was* searched, which terms *were* used to narrow this search to likely responsive records, and *who* worked with Defendant to narrow the search. *See Stalcup v. Dep't of Def.*, No. 13-cv-11967, 2016 WL 6868158 at *1 (D. Mass. Jan. 27, 2016) (denying summary judgment until agency later produced an additional affidavit "explaining the

functions of [its] offices, their record keeping systems, and the parameters of the searches

conducted"). Instead, the affidavit says that Information Management Services Group "worked

with OPA to identify the specific personnel responsible for maintaining the @CIA account, and

narrowed their email searches accordingly." Shiner Decl. ¶ 10. It does not say who was

consulted, whose records were searched, or how it was narrowed. *See Elec. Privacy Info. Ctr. v.*

*Dep't of Justice*, 82 F. Supp. 3d 307, 315 (D.D.C. 2015) (rejecting an agency's limitation,

without explanation, of a search to specific personnel). The affidavit says that "searches were

conducted in all locations in which it is reasonably likely that responsive records would reside,"

but does not show why that conclusory statement is true. Shiner Decl. ¶ 11.

 In sum, these statements provide nothing from which this Court can actually assess the

search. Summary judgment is therefore inappropriate because the Court is without sufficient

information to determine whether the search was adequate. *See Maynard*, 986 F.2d at 560;

*Reporters Comm.*, 877 F.3d at 403–04.

### B.  The Narrow Scope of Defendant's Search and Positive Indications of Overlooked Materials Establish That Defendant Has Not Conducted an Adequate Search

 Because Defendant has yet to describe a reasonably thorough search, the burden has not

shifted to Plaintiff to show that the search was not adequate or conducted in good faith. *See*

*Church of Scientology Int'l*, 30 F.3d at 233 ("The presumption of good faith accorded to agency

affidavits . . . can only be applicable when the agency has provided a reasonably detailed

explanation for its withholdings . . . ."). Even had the burden shifted, Plaintiff would still prevail,

as it is clear on the face of the affidavit that this search was under-inclusive, both by being

improperly narrowed and by overlooking issues raised by Plaintiff immediately after receiving

the records. Sellars Decl. ¶¶ 12–14, Ex. F. Summary judgment is inappropriate given these

shortcomings. *Aguiar v. DEA*, 865 F.3d 730, 737 (D.C. Cir. 2017).

"[A]n agency has a duty to construe a FOIA request liberally." *Nation Magazine*, 71 F.3d at 890; *accord. Nkihtaqmikon v. Bureau of Indian Affairs*, 672 F. Supp. 2d 154, 164 (D. Me. 2009). Adopting an unduly narrow construction of the request, *Pub. Emps. for Envtl. Responsibility*, 842 F. Supp. 2d at 225, or failing to address "positive indications of overlooked materials," *Moffat*, 2011 WL 3475440 at *7, are grounds for denying a summary judgment motion. Defendant does both.

### i.   Defendant Impermissibly Narrowed Its Interpretation of the Scope of Plaintiff's Request

Defendant's affidavit demonstrates that Defendant has interpreted the scope of Plaintiff's request too narrowly. To review, Plaintiff requested three sets of records, limited to records created between August 1, 2012 and the date the request is processed: (1) a copy of all communications between the CIA and Twitter concerning the public-facing @CIA Twitter account; (2) a copy of "any documents or materials, including but not limited to, guides, manuals, handbooks, policies, or presentations used to instruct or train agency personnel in the use" of the @CIA Twitter account; and (3) the list of user applications connected to the @CIA Twitter account. Complaint Ex. 1, ECF No. 1-1. Plaintiff expressly limited part (1) of this request to the OPA, but did not limit parts (2) and (3), knowing that instructions on account operation may originate from other offices. *See id.*

To begin, Defendant's affidavit says its search stopped at records created before January 1, 2017, even though Plaintiff requested all records up until the date that the request was processed, which appears to have been in June 2017. *See id.*; Shiner Decl. ¶ 11 (search was completed on June 26, 2017). Defendant's affidavit does not explain this at all. This is facially deficient, and itself grounds for denying summary judgment. *Ctr. for Biological Diversity v.*

*EPA*, --- F. Supp. 3d ---, No. 16-cv-175, 2017 WL 4326381 at \*8–9 (D.D.C. Sept. 28, 2017) (finding search inadequate due to use of a cut-off date without justification).

Defendant's search should have also included records held by the CIA Office of the General Counsel ("OGC"), Chief Information Officer ("CIO"), and "Web Council." The OPA Standard Operating Procedures for Public Web Applications and Social Media Accounts ("Social Media SOP"), produced in response to this request, indicates specifically that the OGC has a role in establishing and reviewing policies related to use of social media. Sellars Decl. Ex. A, at 8. It further states that the Web Council may "suggest appropriate content." *Id.* at 10.  A supplemental policy says it is based on "[g]uidance approved by OGC and CIO." *Id.* Ex. B, at 2. The records developed when these departments review policies, suggest content, or approve guidance are materials used to "instruct or train agency personnel" in the use of the @CIA account, and these departments should be searched for responsive materials. *Hall*, 268 F. Supp. 3d at 160 ("[A] search is inadequate when it is 'evident from the agency's disclosed records that a search of another of its record systems might uncover the documents sought.'" (quoting *Valencia-Lucena*, 180 F.3d at 326)); *see also Gillin v. IRS*, 980 F.2d 819, 821 (1st Cir. 1992) (per curiam) (agency "had read too narrowly" the initial request, earlier in the case).

Defendant's exclusion of records from the Publications Review Board ("PRB") is also inappropriate. Shiner Decl. ¶ 14. The Social Media SOP states that all content released on Twitter goes through the PRB for review before being posted online. Sellars Decl. Ex. A, at 17–18. Defendant argues that the PRB records are not responsive to Dr. Johnson's request because "[t]he PRB is not responsible for issuing instructions or training on how to publish public material on Twitter . . . ." Def. Memo. at 9. This argument is rebutted by the text of the Social Media SOP itself. The PRB reviews all material that is published, and if the PRB determines that

material should not be released, the PRB must then instruct the OPA not to publish the material, and the OPA no doubt obliges. Any written material generated as part of that review is therefore obviously "material" used to "instruct or train agency personnel in the use" of the Twitter account. *See* Complaint Ex. 1. As with the OGC records, Defendant's strained construction of the request violates Defendant's obligation to construe Plaintiff's FOIA request broadly, *Nation Magazine*, 71 F.3d at 890, and to expand the scope of their search "when leads to other documents arise," rather than simply refusing to search there, *Pub. Citizen v. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 97 (D.D.C. 2013).

Defendant takes this argument to an extreme with its next contention, that it need not reveal the communications between the OPA and then-CIA Director John Brennan concerning the first post to its Twitter account. Def. Memo. at 9. The OPA acknowledged publicly that Director Brennan selected this post from a list of five possible candidates. Sellars Decl. Ex. J, at 7 (transcript of OPA interview discussing selection); *id.* ¶ 19 (noting incidental variations between the transcript and the recording). Defendant remarkably states that this decision by Director Brennan would not be "used to instruct" the OPA in its operation of the account. Def. Memo. at 9. This defies all logic. The Director of the CIA has full authority over all operations of the CIA. 50 U.S.C. § 3036. Orders from the CIA Director about what to post to Twitter are clearly instructions, and Defendant's failure to search for these records is impermissible. *Neighborhood Assistance Corp. of Am. v. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 11 (D.D.C. 2013) (agency must search agency office, as she "appears to have directly reviewed and approved the Department's response").

In sum, Defendant cannot choose to limit its request to one department or set of records in the face of clear evidence that relevant records exist in other departments. *See Valencia-Lucena*,

180 F.3d at 327. The search is inadequate and therefore unreasonable. *Pub. Emps. For Envtl.*

*Responsibility*, 842 F. Supp. 2d at 225.

> **ii.    There Exist Other Positive Indications of Overlooked Materials That Defendant Has Yet to Acknowledge**

Beyond the records Defendant has explicitly acknowledged it did not search, there are

numerous "positive indications of overlooked material" that "raise substantial doubt" as to the

adequacy of Defendant's search, making summary judgment inappropriate. *Valencia-Lucena*,

180 F.3d at 326. Plaintiff raised these issues directly with Defendant two days after receiving the

records. Sellars Decl. Ex. F. Rather than address this overlooked material, Defendant instead has

either argued the issue away, as discussed in Section I.B.i., *supra*, or simply ignored it.

First, the Social Media SOP received by Plaintiff indicates that it was a later revision of an

earlier document. Sellars Decl. Ex. A, at 2 (marked as "Last Edited 2015"). The date on this

document is about a year after Defendant first joined Twitter, indicating that there should be

earlier guidance around those first postings, most likely in the form of earlier editions of the

same document. *Id.* Ex. K (stating that account was created in February 2014); *Friends of*

*Blackwater v. Dep't of Justice*, 391 F. Supp. 2d 115, 120–21 (D.D.C. 2005) (an absence of

earlier drafts served as an indication of overlooked material).

Second, Dr. Johnson knows from FOIA requests she made to the General Services

Administration ("GSA") that OPA staff have participated on email "listservs" where government

employees exchange advice and experiences regarding their use of social media. Sellars Decl.

Exs. G, H. The messages and responses from these listservs (including those directly sent to

Defendant by listserv participants) are materials used to train the OPA on effective use of their

account, and thus fall into the second part of Plaintiff's request. *See id.* Ex. H, at 10–11 (CIA

personnel specifically seeking advice on social media operation). These Documents obtained

from another agency "constitute evidence that responsive documents are likely contained in other . . . files not searched by the agency," and further show an inadequate search. *Info. Network for Responsible Mining v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1185 (D. Colo. 2009).

More broadly, the near-total lack of intra-agency communications in this production indicates countless overlooked records related to the operation of the account. *See O'Connor v. Office of Foreign Assets Control*, No. 17-cv-1490, 2017 WL 5901086 at *5 (E.D. Pa. Nov. 30, 2017) (summary judgment was inappropriate as it was "reasonable to infer that defendant [had] additional documents related to" the request). The agency has made thousands of posts to its account since its launch. Sellars Decl. Ex. K, at 2 (showing 3,503 posts as of Feb. 20, 2016). Yet Defendant has only released one intra-agency email that discusses operation of the account. *Id.* Ex. C. The email itself references omitted materials, to wit, three email attachments that should have been included in the initial response. *Id.* at 2 (referencing three email attachments not included); *see Ayyad v. IRS*, No. 16-cv-3032, 2018 WL 704849 at *5 (D. Md. Feb. 2, 2018) (requiring agency to produce attachments to previously disclosed emails). Beyond this, one cannot credibly believe that only one email was sent between CIA employees over the four years of the account's life, especially given how long Defendant spent developing the account prior to its launch. *See* Sellars Decl. Ex. H (CIA.gov Content Manager Elizabeth Licamele "started this endeavor in early 2009," referring to getting Defendant onto social media). That not one record has been produced from before June 2015, despite years of development and operation before this, further creates an inference that records were overlooked. *Id.* Ex. A, at 2; *see O'Connor*, 2017 WL 5901086 at *5.

Finally, there is reason to believe that further correspondence exists between Defendant and Twitter related to the setup and verification of Defendant's Twitter account. *See* Sellars Decl.

11

Ex. F. Defendant presently claims that the "verification" process with Twitter was conducted over the telephone instead of through written correspondence. Shiner Decl. ¶ 13. Even if that were true — and defendant only points to inadmissible hearsay as to this point, *see* Fed. R. Civ. P. 56(e) — there are indications that other records between Defendant and Twitter exist. For instance, there would almost certainly be emails generated when the account was initially set up requiring the user to confirm their email address, as that was how the Twitter platform was configured at the time the account was made. Sellars Decl. Ex. L, at 2 (reviewing the steps in setting up a Twitter account at the time this account was created). Contemporaneous news reporting also states that Defendant worked with Twitter to remove the prior holder of the @CIA account, which would have almost certainly generated some communications with Twitter. *Id.* Ex. M (Defendant confirming this in a Washington Post article). The "unlikely absence of any external communications" supports the finding that the agency did not conduct an adequate search. *Safety Research & Strategies, Inc. v. Dep't of Trans.*, 903 F. Supp. 2d 1, 9 (D.D.C. 2012).

In sum, Plaintiff does not point to the fleeting absence of some records, but omissions that raise fundamental issues about the reasonableness of the search itself. *See Richardson v. United States*, 80 F. Supp. 3d 128, 134 (D.D.C. 2015). Plaintiff tried to raise these issues with Defendant prior to this briefing, but was rebuffed. Sellars Decl. Ex. F; *see Friends of Blackwater*, 391 F. Supp. 2d at 122. Summary judgment is therefore inappropriate unless and until Defendant addresses these shortcomings in the search.

### C.  The Third Part of Plaintiff's Request Does Not Require Defendant to Create a New Record or Obtain a Record Outside of the Agency's Possession and Control

Most glaringly, Defendant *still* refuses to process the third part of Plaintiff's original request, based on the improper assertion that the search would create a record not within the possession and control of the agency. It has been over three years since Plaintiff provided Defendant the

step-by-step instructions required to retrieve the record. Complaint Ex. 1. Rather than follow

these, Defendant has instead stated that it "is under no obligation to follow those instructions,"

Def. Memo. at 8, either because loading this website would constitute creating a record, or

because the information is outside of its control. *Id.* at 8–9. This is frivolous, and Defendant must

conduct a search for these records. *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 36–37

(D.D.C. 2017) (finding it "manifestly unreasonable" for an agency to ignore where "Plaintiff

specifically noted was the likely place" to find a record).

The request here would not create a record because the record already exists. The page in

question is a standard page that, to the best of Plaintiff's knowledge, is found on all Twitter

accounts, which allows the owner of the account to review and disconnect third-party

applications. This page existed at the time of the initial request. Sellars Decl. Ex. N (instructions

from Twitter at the time the account was made). It was and remains retrievable by logging into a

Twitter account and then navigating to https://twitter.com/settings/applications. *See id.* Ex. O

(this page, for the Twitter account of the law clinic representing Plaintiff). Retrieving a website

page does not create a record any more than querying an electronic database does. *See Nat'l Sec.

Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("[T]he review of computerized

records would not amount to the creation of records." (quoting H.R. Rep. 104-795)); *see also

Gawker Media LLC v. FBI*, 145 F. Supp. 3d 1100, 1109 (M.D. Fla. 2015) (noting release of

"[T]witter account screenshots" specifically, in response to a FOIA request).

Defendant must produce this record even though it is stored on a third-party website.

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 150 (D.C. Cir. 2016).

Courts have long held that an agency must produce a record if the agency is in control of the

material at the time the request is made. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45

(1989). To determine whether an agency "controls" a record, this Court has looked to the intent of the document's creator to relinquish control over the records, the ability of the agency to use the record as it sees fit, the extent to which agency personnel have read or relied upon the document, and the degree to which the document was integrated into the agency's files. *Reich v. Dep't of Energy*, 811 F. Supp. 2d 542, 545 (D. Mass. 2011).

The record here is maintained solely and exclusively for Defendant's use and benefit. By creating a Twitter account, Defendant has asked Twitter to provide it with a platform for publishing content, along with tools to manage its configuration and use of the account. This includes whether and how Defendant can link third-party applications to its Twitter account. *See* Sellars Decl. Ex. O (the likely analogue to this record, providing this power). Twitter freely allows Defendant to control this page, and by using the platform, Defendant relies on this page in its use of the account. *See Reich*, 811 F. Supp. 2d at 545. That a third-party website hosts the page is irrelevant. *See Competitive Enter. Inst.*, 827 F.3d at 150.

Defendant's refusal to respond to the third part of Plaintiff's request renders Defendant's search inadequate, and summary judgment is therefore inappropriate.

## II.     Defendant Has Failed to Justify Its Withholding of any of the Records

Defendant has produced 18 documents in part, and not one document in full. Joint Status Report at 2. It withholds information under three FOIA exemptions: Exemption 3 (material withheld by another statute), Exemption 5 (predecisional deliberative process privilege), and Exemption 6 (clearly unwarranted invasion of privacy). Not one of these exemptions is adequately substantiated. Defendant fails to provide adequate information for the Court to determine whether it properly applied Exemption 3. It misconstrues the deliberative process privilege in attempt to redact material under Exemption 5. Defendant also inappropriately applies

14

Exemption 6 to withhold material of substantial public interest, without any meaningful privacy concern. "The government must supply any information requested . . . unless it determines that a specific exemption, narrowly construed, applies." *Church of Scientology Int'l*, 30 F.3d at 228. The government has not met its burden in doing so here, and Plaintiff asks this Court to order Defendant to either produce the records or better substantiate withheld material. *Id.* at 240.

### A. Defendant Has Failed to Provide the Court with Sufficient Information to Determine the Applicability of Exemption 3

Defendant has withheld substantial portions of multiple records under Exemption 3, pursuant to the National Security Act, 50 U.S.C. § 3024, and the CIA Act, 50 U.S.C. § 3507, but fails to sufficiently justify these redactions. An agency must do more than offer conclusory statements in order to use FOIA withholding statutes to redact information. *See Founding Church of Scientology v. NSA*, 610 F.2d 824, 831 (D.C. Cir. 1979). To properly invoke Exemption 3, Defendant must provide affidavits with "the kind of detailed, scrupulous description [of the withheld information] that enables a District Court judge to perform a searching de novo review." *Church of Scientology of Cal. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980). Until it does so, summary judgment is improper. *Whitaker v. CIA*, 31 F. Supp. 3d 23, 35, 37–38 (D.D.C. 2014) (requiring CIA to "file a more sufficient declaration and *Vaughn* index which justifies the actual relationship between the withheld information and personnel functions of the CIA" and "why all of the information withheld pertains to intelligence sources and methods").

Defendant justifies its application of the National Security Act by making the conclusory statement that "information would reveal specific sources and methods of the Agency, including techniques used to protect information systems, guidance regarding counter intelligence threats, and the Agency's agreements with social media providers." Shiner Decl. ¶ 17. Its *Vaughn* Index provides even less detail, merely stating that Exemption 3 "was asserted to protect information

about intelligence sources and methods." *Vaughn* Index at 2, ECF No. 24-2. Far from providing

"as much detail as possible as to the nature of the document, without actually disclosing

information that deserves protection," this merely recites the standard for withholding

information. *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996); *see also Church*

*of Scientology Int'l*, 30 F.3d at 231 (rejecting a *Vaughn* Index when the agency made "broad

statements essentially explaining that the documents were withheld because they contain the type

of information generally protected by that particular exemption").

Defendant argues that the CIA Act requires them to withhold "titles, names, functions, and

organizational information of CIA employees," and in some instances, "detailed descriptions of

the official functions of certain officers or the internal organizational structure of certain offices

. . . ." Shiner Decl. ¶ 18. Again, the *Vaughn* Index does nothing to support this conclusory

explanation. *See Vaughn* Index at 1. These descriptions suffer from the same fatal shortcoming

as those with the National Security Act above. *See Church of Scientology Int'l*, 30 F.3d at 231.

They also are inappropriate to the extent that they withhold the names of Web Content Manager

Carolyn Reams and other publicly-known OPA staff, as the agency has voluntarily identified

those persons in public events and presentations, and thus waived their ability to now claim

protection from re-revealing their identities. *See N.Y. Times Co. v. Dep't of Justice*, 756 F.3d

100, 116–17 (2d Cir. 2014); *(Adam) Johnson v. CIA*, No. 17-cv-1928, Dkt. No. 28, Slip Op. at 5

(S.D.N.Y. filed Jan. 30, 2018); *see* Sellars Affidavit, Exs. H, P (noting prior disclosures of OPA

staff names). To the extent that Defendant now seeks to withhold the names and titles of

voluntarily disclosed personnel, it may no longer do so. *N.Y. Times Co.*, 756 F.3d at 114.

Because Defendant has not put forth an affidavit of "sufficient detail to forge the logical

connection between the information withheld and the claimed exemption," *Oglesby*, 79 F.3d at

16

1178, and seems to withhold information that is already publicly known, *N.Y. Times Co.*, 756 F.3d at 114, summary judgment is improper until Defendant more fully justifies redactions or discloses the records in question. *Church of Scientology Int'l*, 30 F.3d 239–40.

### B.  The CIA Improperly Applied Exemption 5 Because the Material in Question is Post-Decisional and Not Deliberative

Defendant withholds one record in part under the "deliberative process privilege," recognized in FOIA's Exemption 5. 5 U.S.C. § 552(b)(5); *see* Shiner Decl. ¶¶ 19–20; Sellars Decl. Ex. B. This record states the policy under which the OPA will "follow" other Twitter account users. Sellars Decl. Ex. B, at 2–3. Defendant states that Exemption 5 applies because the record "provides information for Agency employees to consider prior to making a decision whether to engage in certain activities on social media." Shiner Decl. ¶ 20. This describes an active rule on what an employee should consider before taking a course of action, not the draft of a rule or one's opinion as to what a rule should be. Based on this statement alone, it is clear that Exemption 5 does not apply.

The deliberative process exemption only allows agencies to withhold information when it establishes that the document is both "deliberative" and "predecisional." *Stalcup*, 768 F.3d at 70. If the documents in question provide final guidance on an agency's position, the documents are not "predecisional." *See Schlefer v. United States*, 702 F.2d 233, 237 (D.C. Cir. 1983). Similarly, documents that do not reflect the writer's personal views, and instead state formal policy, are not "deliberative." *Providence Journal Co. v. Dep't of Army*, 981 F.2d 522, 559 (1st Cir. 1992).

The material Defendant withholds under Exemption 5 is neither predecisional nor deliberative. On its face, this document states an established policy as to what OPA staff may and may not do, in a way that indicates that it is meant to be a binding set of guidance. Sellars Decl. Ex. B, at 2–3 (stating, *inter alia*, "CIA will NOT follow" certain accounts and "Twitter

accounts may 'follow'" other accounts). There is no "give-and-take" deliberation in these

documents to protect; the document does not indicate that its instructions are up to debate.

*Stalcup*, 768 F.3d at 70. Defendant also fails to "pinpoint the specific agency decision to which

the document correlates," likely because the agency decision is the one reflected in the presently-

withheld document. *Providence Journal Co.*, 981 F.2d at 557. For these reasons, Defendant's

reliance on Exemption 5 is wholly inadequate, and Defendant must produce the record in full.

> **C. Defendant Improperly Applies Exemption 6 Because the Names and Job Titles of Twitter Employees Are Not Similar to Medical or Personnel Records, the Disclosure of Which Results in a Clearly Unwarranted Invasion of Privacy**

Finally, Defendant uses Exemption 6 to withhold the names and titles of the Twitter and CIA

employees that are interacting via email while Defendant operates the account. Sellars Decl.

Ex. D (emails between Defendant and Twitter). Exemption 6 is inapplicable. This exemption

protects "personnel and medical files and similar files the disclosure of which would constitute a

clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It is markedly narrower

than the law-enforcement privacy provision in Exemption 7(C). *NARA v. Favish*, 541 U.S. 157,

165–66 (2004) (noting that Exemption 6, unlike (7)(C), uses the adverb "clearly," and "would

constitute" instead of "could reasonably be expected to constitute").

The names and titles of Twitter employees do not fall within the scope of files covered by

this exemption, as these are not the type of government records on an individual that the

exemption is designed to protect. *Families for Freedom v. CBP*, 837 F. Supp. 2d 287, 301

(S.D.N.Y. 2011) (finding email records to be "are mundane interoffice communications that do

not contain any detailed personal information" and "can in no way be construed as similar to

personnel or medical files.") Exemption 6 is therefore categorically inapplicable.

Even if the records were subject to Exemption 6, the balance of interests clearly mandates disclosure. To withhold a record under this exemption, Defendant must show that the privacy interest at stake clearly outweighs the interests of the public in understanding government operations. *Dep't of State v. Ray*, 502 U.S. 164, 172 (1991). Here there is very little privacy interest to speak of, if any. There is no privacy interest as to the job titles of Twitter and CIA personnel. *News Grp. Boston, Inc. v. National R.R. Passenger Corp.*, 799 F. Supp. 1264, 1272 (D. Mass. 1992) ("Job titles, therefore, are not subject to exemption 6."). To the extent it seeks to protect the privacy interests of Twitter itself, that is also clearly improper, as "personal privacy" under FOIA does not apply to corporations. *FCC v. AT&T*, 562 U.S. 397, 409 (2011). As applied to the CIA employees operating the account, their names and titles have been voluntarily disclosed elsewhere. Sellars Decl. Ex. P (publicly displaying personnel names on a conference page); *id.* Ex. I (public interview with OPA staff); *see also Hall v. CIA*, 881 F. Supp. 2d 38, 71 (D.D.C. 2012) (CIA failed to justify withholding names of individuals "commonly publicized"). Even if some information could be withheld, Defendant must tailor its redactions solely to protect that which can be withheld, and no more. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 375–76 (1976).

In contrast, providing the names and job titles would in fact shed important light on the types of interactions the CIA has with Twitter employees. One need only turn on the news to see how important the government's relationship to social media has become in recent years. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1738 (2017) (access to social media is "integral to the fabric of modern society and culture"); *Int'l Refugee Assistance Project v. Trump*, 265 F. Supp. 3d 570, 585 (D. Md. 2017) (analyzing Twitter statements as part of a review of President Trump's travel ban). Defendant's relationship and level of access to Twitter, Inc. —

whether Defendant is speaking to Twitter's CEO or its standard customer service, for instance —
would help citizens to understand the nature of Defendant's engagement with the platform, and
through it, with the public. As a trained anthropologist with an expertise on social media
platforms, Dr. Johnson is well positioned to provide the public with unique insights into how
Defendant's actions relate to a broader understanding of the public's relationship with social
media and government. Sellars Decl. Ex. Q (Plaintiff's PhD dissertation abstract, specifically
addressing this issue).

In sum, Defendant has failed to meet the "the heavy presumption in favor of disclosure found
in Exemption 6," and must disclose this information. *Hall*, 881 F. Supp. 2d at 71.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's
Motion for Summary Judgment, order Defendant to conduct a more adequate search and disclose
improperly withheld records, and allow for additional discovery as is necessary, in response to
Plaintiff's request. *See Church of Scientology Int'l*, 30 F.3d at 239–40.

Respectfully Submitted,

AMANDA JOHNSON,

By her counsel,

  /s/ Andrew F. Sellars
ANDREW F. SELLARS (BBO No. 682690)
BU/MIT Technology & Cyberlaw Clinic
Boston University School of Law
765 Commonwealth Avenue
Boston, MA 02215
sellars@bu.edu
Tel: (617) 358-7377
Dated: February 23, 2018          Fax: (617) 353-6944

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, on February 23, 2018.


 /s/ Andrew F. Sellars