UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMANDA JOHNSON,

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

No. 17-cv-10789-JGD

Leave to file granted
May 30, 2018, ECF No. 47

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL FILING

This response addresses the new factual and legal arguments presented by Defendant in its supplemental filing on May 25, 2018, following the argument on Defendant's motion for summary judgment on April 11, 2018. The sole issue in Defendant's supplemental filing is the part of Plaintiff's Freedom of Information Act request seeking a particular settings page on the platform Twitter, which displays the third-party applications connected to Defendant's public-facing Twitter account. Def.'s Suppl. Filing in Supp. of Summ. J. 1, ECF No. 45.

The Court was correct at the April 11 hearing that the document at issue is merely a website account settings page, and Defendant was initially correct — prior to it changing its mind a month later — that taking a screenshot of this page does not impermissibly require the agency to create a record under FOIA. Tr. of Mot. Hr'g 11:7–12:20, ECF No. 43. The website page is an existing record, even though it is dynamically retrieved in an electronic database. *See Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012).

The heart of Defendant's argument appears to be that because the page that is retrieved at the URL https://twitter.com/settings/applications is dynamically generated, it cannot be considered a record under FOIA. Def.'s Suppl. Filing 1. Congress disagreed over two decades ago. In drafting the Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, 110 Stat. 3048 (1996), Congress determined that "the review of computerized records would not amount to the creation of records. Otherwise, it would be virtually impossible to get records maintained in a completely electronic format, like computer database information, because some manipulation of the information likely would be necessary to search the records." H.R. Rep. No. 104-795 at 22. Dynamically generated websites, like electronic databases, contain elements in various files that are not assembled into a single visual page until a user accesses it, but "the act of searching or sorting an electronic database is clearly not the creation of a record under the FOIA." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 271 (D.D.C. 2012); *see also Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 79–81 (D.D.C. 2007) (entries in a database assembled from a variety of sources and formats were records subject to FOIA). Here, as Defendant admits, the record retrieves already-stored information about what applications are attached to the CIA's account and then displays that information to the user in a human-readable format. Def.'s Suppl. Filing 2. This is no different than retrieving a record from a database, as that record may also include dynamic elements, such as automatically stamping the time and date the record is retrieved. The CIA has already produced this type of record in this litigation. *See, e.g.*, Declaration of Andrew Sellars, Ex. A, ECF No. 28-2 (a produced document that contains an "Approved for Release" stamp at the bottom of each page, which appears to be automatically generated).

Furthermore, Defendant's argument would mean that not just this website, but nearly *all*

modern websites, are outside the scope of FOIA. Most modern websites are dynamically generated, frequently personalizing a site with information, for example, about a user's account, browsing history, type of browser, default fonts, location, or time of day. *See* David Gourley & Brian Totty, *HTTP: The Definitive Guide* 197–98, 204 (2002) (modern websites routinely use application server gateways to generate dynamic content). Congress has made clear that modern technologies should improve access to government records; it would be fundamentally against the aim of FOIA to definitionally exclude all of the modern Internet. *See* H.R. Rep. No. 104-795 at 11; *Pub. Emps. for Envtl. Responsibility v. EPA*, No. 17-cv-652, 2018 WL 2464463, at *3 (D.D.C. June 1, 2018) ("The FOIA's prodisclosure purpose . . . and legislative history reflect an intent to avoid creating loopholes for denial of access . . . ." (internal citation omitted)).

Defendant suggests that *National Security Counselors v. CIA* and *Brown v. Perez* hold that requests for an agency to produce a "list" or a "screenshot" are impermissible. Def.'s Suppl. Filing 3. This argument misapplies both cases. *National Security Counselors* does not categorically exclude "lists." It instead distinguishes between permissible requests that seek "contents" in a database, and impermissible requests that seek "information about those contents." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271; *see also Brown v. Perez*, 835 F.3d 1223, 1229, 1237 (10th Cir. 2016) (agency produced records from a database, although it disputed producing screenshots of the running software's drop-down menus); *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 451 (D.D.C. 2014) (agency provided digital copies of all indices requested, but has no duty to generate a summary of the index). Plaintiff's request seeks the contents of a particular settings page of the @CIA Twitter account, not any additional information about that content or page.

This request also does not require Defendant to create the sort of screenshot discussed by

*Brown*. Even accepting that the decision in *Brown* is correct — although *Brown* itself cites no authority for its rule — the case only addresses requests that ask an agency to take a screenshot of a running software interface, in order to show how the software appears on a user's computer screen. *Brown*, 835 F.3d at 1229, 1237. Plaintiff has not asked for a screenshot of running software; in fact, she does not ask for a "screenshot" at all. Compl. Ex. A, ECF No. 1. Although a screenshot may be a convenient way for Defendant to provide the record, Plaintiff would accept a copy of the record in another form, such as a printout, the HTML file and accompanying media files retrieved by the web browser, or a PDF file. Plaintiff has repeatedly and consistently tried to work with Defendant to expedite this request in a way that is beneficial to both parties. *See* Sellars Decl. Ex. F, ECF No. 28-7. As the existence of Defendant's supplemental briefing demonstrates, Defendant has made no effort to cooperate in return.

Finally, Defendant makes several "strained attempts to raise an epistemological smokescreen . . . to evade its obligations under the FOIA." *Pub. Emps. for Envtl. Responsibility v. EPA*, 2018 WL 2464463 at *4. Each is addressed in turn.

Defendant argues that because Plaintiff provided "instructions" on how to "generate a new record," Plaintiff intended that Defendant impermissibly create a record in response to her request. Def.'s Suppl. Filing 2 n.1. Defendant mischaracterizes Plaintiff's position, which has consistently remained, for almost three and a half years, that to satisfy this request Defendant need only visit https://twitter.com/settings/applications while logged in to the @CIA Twitter account. Compl. Ex. A. Plaintiff provided this set of instructions merely for Defendant's convenience, and in the "spirit of cooperation" that FOIA intends to foster. President Barack Obama, Mem. for the Heads of Exec. Depts. and Agencies re: Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 21, 2009) ("In responding to requests under the FOIA, executive branch

agencies . . . should act promptly and in a spirit of cooperation, recognizing that such agencies

are servants of the public."). Plaintiff's request also unambiguously states the direct way to

retrieve the record. *See* Compl. Ex. A.

Defendant next argues that the agency has never navigated to this page "in the ordinary

course of its business." Def.'s Suppl. Filing 2. Putting aside that Defendant has not supported

this statement with admissible evidence, Fed. R. Civ. P. 56(c), that fact would be irrelevant. No

authority requires that a record be used in the ordinary course of an agency's business before it is

subject to FOIA. *See Reich v. Dep't of Energy*, 811 F. Supp. 2d 542, 545 (D. Mass. 2011)

(defining "agency records" subject to FOIA). The issue only arises when considering the

substance of certain exemptions or when a requester makes demands that records be provided in

a certain format. *See Maine v. Dep't of Interior*, 298 F.3d 60, 70 (1st Cir. 2002) (records that are

prepared in the "ordinary course of business" are not subject to withholding under Exemption 5

for attorney–client privilege); *TPS, Inc. v. Dep't of Def.*, 330 F.3d 1191, 1195 (9th Cir. 2003).

The essential question is instead whether this record is under the control of the agency. *See*

*Reich*, 811 F. Supp. 2d at 545. Plaintiff's opposition sets forth the factors that this Court has used

to determine whether this record is in the custody and control of agency. Pl.'s Mem. in Opp'n to

Def.'s Mot. for Summ. J. 14, ECF No. 28. These factors unequivocally demonstrate that

Defendant controls this record. Defendant has not contested this analysis.

Furthermore, evidence in the record suggests that the CIA *has* in fact reviewed this page.

The CIA's Standard Operating Procedures, attached as Exhibit A in Plaintiff's initial opposition,

states that CIA personnel will "periodically re-review the privacy policies of existing CIA social

media sites." Sellars Decl. Ex. A at 7. Twitter's privacy policy specifically mentions third-party

applications and includes links for users to review those connected application. *Privacy Policy*,

Twitter, https://twitter.com/en/privacy (last accessed June 6, 2018); *see also* Sellars Decl. Ex. N, ECF No. 28-15 (a screenshot of the page the Privacy Policy references from the time the request was first made, describing Twitter's interface with third-party applications). Third-party applications on social media accounts were also the subject of a major news story earlier this year, when it was revealed that the firm Cambridge Analytica used a third-party application connected to Facebook as the source of a massive data leak. *See* Brian X. Chen, *How to Protect Yourself (and Your Friends) on Facebook*, N.Y. Times, Mar. 19, 2018, at A18. It strains credibility to argue that after this data leak the leading intelligence agency in the world did not take the most obvious step and check this very page, to ensure that its Twitter account was not similarly compromised.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons set forth herein and in Plaintiff's previous briefs, Plaintiff asks the court to deny Defendant's motion for Summary Judgment, order Defendant to conduct a more adequate search and disclose improperly withheld records, and allow for additional discovery as is necessary, in response to Plaintiff's request.

Date: June 7, 2018

Respectfully Submitted,

AMANDA JOHNSON,

By her counsel,

   */s/ Andrew F. Sellars*
ANDREW F. SELLARS (BBO No. 682690)
BU/MIT Technology & Cyberlaw Clinic
Boston University School of Law
765 Commonwealth Avenue
Boston, MA 02215
sellars@bu.edu
Tel: (617) 358-7377
Fax: (617) 353-6944

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, on June 7, 2018.


*/s/ Andrew F. Sellars*