# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY<br><br>    Defendant. | Case No. 17-cv-10789-JGD |

## SECOND DECLARATION OF ANDREW F. SELLARS

I, Andrew F. Sellars, hereby depose and state as follows:

### I. Introduction

1.  I am a Lecturer and Clinical Instructor at Boston University School of Law, and Director of the BU/MIT Technology Law Clinic, a law school clinic. I represent Plaintiff Dr. Amanda Johnson in the above-captioned matter.

2.  I am licensed to practice law in the Commonwealth of Massachusetts and the State of New York, and admitted to the bar of the United States District Court for the District of Massachusetts.

3.  I submit this declaration in support of Plaintiff's Motion for Summary Judgment in the above-captioned matter. The statements set forth in this declaration are based on my own personal knowledge and investigation unless stated otherwise. These statements are true to the best of my knowledge and belief as of the date I sign this declaration.

**II. Documents Responsive to Plaintiff's Request**

1. Attached hereto as **Exhibit A** are true and correct copies of documents that I received from Defendant's counsel in response to Plaintiff's FOIA request, marked as C06779174 ("#14384880 Twitter Support: Request More Information 'Brand Impersonation – cia'") and C06775748 ("RE: @CIA & #Sharkweek"). To the best of my knowledge, these emails are examples of situations in which Defendant's employees used personal email accounts as part of their Agency work.

2. Attached hereto as **Exhibit B** are true and correct copies of documents that I received from Defendant's counsel in response to Plaintiff's FOIA request, marked C06783840 ("Re: Twitter TOS"); C06779184 ("Re: Twitter & CIA"); C06779224 ("Re: briefing"), C06779217 ("Re: Meeting"), C06779119 ("Re: first tweet impression"), C06775762 ("Re: anything you want DCIA Brennan to know for the interview today?"), C06775764 ("Re: anything you want DCIA Brennan to know for the interview today?"), C06779135 ("Fwd: anything you want DCIA Brennan to know for the interview today?"), C06775763 ("Fwd: anything you want DCIA Brennan to know for the interview today?"), C06779313 ("Re: anything you want DCIA Brennan to know for the interview today?"), C06779311 ("RE: DCIA video"), C06779307 ("Re: 2 Things"), and C06779106 ("Re: polling cards"). To the best of my knowledge, the records reflect discussions regarding the involvement of personnel within the Office of the Director of the CIA in matters related to the *@CIA* Twitter account.

3. Attached hereto as **Exhibit C** is a true and correct copy of a document that I received from Defendant's counsel in response to Plaintiff's FOIA request, marked C06779112 ("Re: account question"). This record contains redactions by Defendant, citing Exemptions (b)(3) (CIA Act and National Security Act) and (b)(6).

4. Attached hereto as **Exhibit D** are true and correct copies of documents that I received from Defendant's counsel in response to Plaintiff's FOIA request, marked C06779203 ("RE: Accounts impersonating the Central Intelligence Agency"), C06775803 ("RE: Hello from CIA"), and C06779219 ("Re: mute"). To the best of my knowledge, these records all reflect efforts of Defendant to block or "mute" accounts that allegedly impersonate the CIA.

5. Attached hereto as **Exhibit E** is a spreadsheet listing, to the best of my knowledge, all records received from Defendant's counsel that reference personnel within Defendant's Office of Public Affairs ("OPA") conducting official business using their personal email accounts. Each row of the spreadsheet consists of a single "record" produced by Defendant, which was usually a chain of emails. Duplicative records are included in the same row and identified as such. Within the columns are the number of emails sent by Agency personnel using their personal accounts, emails sent from Agency personnel from official accounts while copying personal accounts, and emails received by Agency personnel on their personal accounts. To the best of my knowledge, these records show at least 55 instances in which correspondence was conducted using the private emails of OPA staff, including 29 emails that were sent from OPA staff using their personal emails. Two of the emails referenced are also provided as Exhibit A.

### III. Negotiations between the Parties after the First Round of Summary Judgment

6. Attached hereto as **Exhibit F** is a true and correct copy of a memorandum I sent to counsel for Defendant by email on March 13, 2019. In this memo, Plaintiff identifies numerous issues arising from Defendant's January 2019 production, the majority of which have since been resolved.

7. In response, on May 3, 2019, Defendant provided a description of its search of, *inter alia*, the OPA email accounts, the search of the Publications Review Board, and the search of the

Information Management Services. The email indicated that only the official email accounts of the OPA were included as part of the search.

8. Attached hereto as **Exhibit G** is a true and correct copy of a memorandum I sent to counsel for Defendant by email on June 21, 2019. In this memo, Plaintiff articulates several ongoing concerns arising from Defendant's searches and productions.

9. Attached hereto as **Exhibit H** is a true and correct copy of Defendant's updated *Vaughn* index dated June 27, 2019, which I received on July 30, 2019.

10. Attached hereto as **Exhibit I** is a true and correct copy of a document from Defendant dated July 26, 2019 entitled "Expanded Description of Searches Conducted in Response to Plaintiff's FOIA Request," which I received on July 30, 2019.

11. Following Defendant's responses on July 30, 2019 and continuing through November 2019, Plaintiff sought to resolve the issues currently contested in the present briefing on summary judgment, as well as other issues, such as the reproduction of records containing illegible content. The parties were able to resolve some outstanding issues related to Defendant's searches and production.

12. In an effort to facilitate negotiations, counsel for Plaintiff offered to discuss outstanding issues and the purpose of Plaintiff's research by telephone in September and October 2019. Counsel for Defendant did not agree to a telephone conference.

13. On November 22, 2019, Plaintiff requested a status conference before the Court in light of Defendant's refusal to engage substantively on several outstanding issues, including the legibility of two records and the undisclosed location of documents relevant to the Information Review Officers' prepublication review of Twitter content.

14. On December 6, 2019, the Court held a status conference, *inter alia*, ordering reproduction of illegible documents in legible form. During the status conference, counsel for Defendant revealed for the first time that documents related to the Information Review Officers' review of proposed Twitter content would be held by the CIA's Information Management Services, instead of the Publications Review Board.

15. On March 17, 2020, in anticipation of the present briefing, counsel for Defendant provided me a draft copy of the Declaration of Vanna Blaine, a records officer in the Agency. Counsel for Defendant indicated in her March 17, 2020 email that this is not the final declaration, but that "changes are not anticipated." Attached hereto as **Exhibit J** is a true and correct copy of the draft Declaration of Vanna Blaine provided by Defendant's counsel.

16. Defendant's counsel sent me an email on July 9, 2020, stating that their final version of the declaration would contain no material changes.

## IV. Other Documents

17. Attached hereto as **Exhibit K** is a true and correct copy of a declaration dated March 23, 2018 from Antoinette Shiner, responding to a Freedom of Information Act request filed by the plaintiffs in *Hardway v. CIA,* 17-cv-01433 (D.D.C.) as ECF No. 20-1.

18. Attached hereto as **Exhibit L** is a true and correct copy of a declaration dated March 23, 2018 from Antoinette Shiner, responding to a Freedom of Information Act request filed by the plaintiff in *Assassination Archives and Research Center v. CIA*. This declaration was filed in *Assassination Archives and Research Center, Inc. v. CIA*, No. 17-cv-00160 (D.D.C.) as ECF No. 24-1.

19. Attached hereto as **Exhibit M** is a true and correct copy of the unpublished per curiam judgment by the First Circuit in *Stalcup v. Department of Defense*, No. 16-01225, dated January 3, 2018.

20. Attached hereto as **Exhibit N** is a true and correct copy of a document on Defendant's website entitled "CIA Organization Chart," dated October 9, 2015, which I retrieved from Defendant's website, at https://www.cia.gov/about-cia/leadership/cia-organization-chart.html.

\* \* \*

I declare under penalty of perjury the foregoing statements are true and correct to the best of my knowledge. Executed as of this 9th day of July, 2020.

_____
ANDREW F. SELLARS (BBO No. 682690)
BU/MIT Technology Law Clinic
Boston University School of Law
765 Commonwealth Avenue
Boston, MA 02215
sellars@bu.edu
Tel:  (617) 358-7377
Fax:  (617) 353-6944